# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-62338-CIV-ROSENBAUM

KEVIN PRESCOTT,

PLAINTIFF,

VS.

SETERUS, INC.,

DEFENDANT.
_________________________/

Videoconferenced Deposition of WAN-I JENNY LEE

2530 Meridian Parkway
Durham, North Carolina

Beginning at 10:16 a.m.
Tuesday, September 23, 2014.

Reported by:
Leslie Kujawa, Court Reporter
Notary Public, State of North Carolina

APPEARANCES OF COUNSEL

On behalf of the Plaintiff (appearing via videoconferencing):

J. Dennis Card, Jr.
Consumer Law Organization, PA
2501 Hollywood Blvd, Suite 100
Hollywood, Florida 33020
(954) 921-9994
dcard@consumerlaworg.com

On behalf of the Defendant:

Seric J. Fallon
McGinnis Wutscher Beiramee, LLP
110 E. Broward Blvd, Suite 1700
Fort Lauderdale, Florida 33301
(786) 553-8082
sfallon@mwbllp.com

INDEX OF EXAMINATION


| | Page |
|---|---|
| Direct Examination by Mr. Card | 5 |

INDEX OF CERTIFIED QUESTIONS


| PAGE | LINE |
|---|---|
| 7 | 15 |
| 9 | 18 |
| 10 | 2 |

WAN-I JENNY LEE,

having been duly sworn, testified as follows:

DIRECT EXAMINATION

BY MR. CARD:

**Q. Ma'am, could you please state your full legal name for the record.**

A. It's Wan-I Jenny Lee. W-a-n, dash, I. Jenny, J-e-n-n-y. Last name L-e-e.

**Q. And who do you work for, Ms. Lee?**

A. Seterus, Inc.

**Q. And how long have you worked for Seterus, Inc.?**

A. Since April of 2010.

**Q. Have you had your deposition taken before, ma'am?**

A. I have.

**Q. Okay. Well, my name is Dennis Card. I'm an attorney. I represent Kevin Prescott in a matter that's been filed against Seterus. Do you understand that?**

A. Yes.

**Q. Okay. I want to go over just a couple of things. I know you've had your deposition taken before, but just so that we get this done as quickly as possible, I just want to cover some of the basic ground rules.**

**First of all, do you understand that the testimony you're giving today is sworn testimony? It's the same that you would give in a court of law.**

A. Yes.

**Q. Do you understand that you have an obligation to tell the truth?**

A. Yes.

**Q. Okay. And if you could, just continue answering yes or no and not nodding your head so that we have a clean record, that would be greatly appreciated.**

A. Okay.

**Q. Okay?**

A. Yes.

**Q. Are you under the influence of -- Are you under the influence of alcohol, narcotics, prescription medication, or anything that would cause you to have a problem to understand my questions and to answer them truthfully?**

A. No.

**Q. Okay. I'm not here to trick you and I'm not here to mislead you, so if I ask you a question and you don't understand my question, please stop me and I will repeat it until you understand the question. Okay?**

A. Okay.

**Q. If you answer questions that I ask you, I am**

**going to presume that you understood my questions. Okay?**

A. Okay.

**Q. Okay. And I just -- so that I get this correctly, your name is Wan, that's W-a-n, hyphen, I, like igloo. Jenny, J-e-n-n-y. Lee, L-e-e. Is that correct?**

A. Yes.

**Q. Okay. What's your social security number, ma'am.**

MR. FALLON: We're going to need to go off the record.

(DISCUSSION OFF THE RECORD.)

BY MR. CARD:

*Q. Okay. Ms. Lee, I just agreed for your attorney to take your social security off the record. We went off the record, and you're now refusing to provide it. Is that correct?

A. Yes.

MR. CARD: Okay. Ma'am, can you certify that question? We'll be coming back and taking your deposition to do that again.

MR. FALLON: Again, as I -- excuse me. Let -- Sir, if you have any -- Mr. Card --

MR. CARD: I don't want to -- anything from

you except a legal objection.
MR. FALLON: Mr. Card --
MR. CARD: If you don't have a legal -- don't interrupt me.
MR. FALLON: Mr. Card --
MR. CARD: If you have a legal objection, make it.
MR. FALLON: I am making the objection on the basis that it's irrelevant, that she can only be contacted through our office, and you have no bases for requesting the social security. If she was willing to give it to you voluntarily, it could have been done off the record. She's decided not to for privacy reasons, and that's the end. That's the end of our position on this issue.
MR. CARD: So you're objecting on the basis of privacy?
MR. FALLON: Correct.
MR. CARD: Okay. So let me just read to you, so that when you get the motion for sanctions you're not surprised. The Southern District Florida Local Rule 30.1(a)(3), the practices handled in this district as instructing the witness not to answer is greatly disfavored and is a practice upon which should only be used in an appropriate -- an

extraordinary situation usually in part involving the privilege.

A lawyer who improperly instructs a witness not to answer runs a serious risk that the lawyer and the clients -- that's you, ma'am -- may be subject to substantial monetary sanctions.

MR. FALLON: I --

MR. CARD: Having said that, do you --

MR. FALLON: I understand the Rule. I understand the Rule. And I'm making a motion for protective order locum tenens at this time on the basis of privacy.

MR. CARD: Okay.

MR. FALLON: And that's --

MR. CARD: There's no such thing as a privacy objection, which you should know, but okay.

BY MR. CARD:

*Q. Ms. Lee, what's your date of birth?

MR. FALLON: Do you want to answer that question?

THE WITNESS: No.

MR. FALLON: Same objection, same motion for protective order.

MR. CARD: Okay. Certify that question, ma'am. We'll be coming back for that, too.

BY MR. CARD:

*Q. Will you give me your address, Ms. Lee?

MR. FALLON: It's up to you.

A. I do not want to provide it.

MR. FALLON: Same objection and same motion for protective order.

MR. CARD: Okay. Certify that question. We'll be coming for -- back for that too, ma'am.

BY MR. CARD:

**Q. Will you tell me -- Are you going to refuse to answer all questions? Let's start with that.**

MR. FALLON: No, she will not.

MR. CARD: I didn't ask you anything, sir.

MR. FALLON: She won't be refusing to answer all questions at this deposition.

MR. CARD: I don't -- Would you please stop testifying.

MR. FALLON: If this is --

MR. CARD: If you have a legal objection --

MR. FALLON: Mr. Card --

MR. CARD: -- make it.

MR. FALLON: Mr. Card, I'm making a motion pursuant to your obvious intent to embarrass, harass, annoy, and oppress my witness, that if you continue in this manner, I will be making a motion

to terminate or limit of the 30(d)(3). Do you understand that rule?

MR. CARD: I understand all the rules. It's apparently you that don't.

MR. FALLON: You need to start treating me with more professional respect as well or I'll also terminate on the same basis.

MR. CARD: You do whatever you feel is necessary, sir, whatever it is. A normal civil deposition, you -- the first three questions are address, date of birth, and social security number. If you don't do it, it's malpractice. And I assume that if I read your deposition transcripts, you do it on every single one of them.

MR. FALLON: This is a corporate representative's deposition. The --

MR. CARD: Yes, it is.

MR. FALLON: The witness can only be contacted via my office. You have no need for her contact details, and it is completely unquestionably beyond the scope of the issues in this case.

You are certainly free to file your motion with the Court. However, I have made my position perfectly clear, and I'd like us to continue in a good faith manner, or if it's -- if you do not do

so, I will -- and I'm advising you at this time -- move to terminate under 30(d)(3).

I do not intend to do so now. However, if this deposition continues to be taken in bad faith or with the intention to embarrass, harass, annoy, or oppress my witness, I will do so.

MR. CARD: Okay.

BY MR. CARD:

**Q. Ma'am, have you ever been arrested or convicted of any crimes?**

A. No.

**Q. Okay. And what is your position with Seterus?**

A. Legal mediation officer.

**Q. Did you say mediation, ma'am?**

A. Yes.

**Q. Okay. Legal mediation officer. And in layman's terms, what specifically do you do for Seterus?**

A. I review loans that are in default. I attend mediations telephonically, by phone, in person. We attend jury trial, non-jury trials, depositions, settlement conferences, anything that involves a corporate representative to be the point of contact or appear in person.

**Q. Okay. And you've been designated as the corporate representative for today's deposition by**

**Seterus; is that correct?**

A. Yes.

**Q. Okay. And, ma'am, we -- I've provided a list of topics in advance of today's deposition, and it's dated September 3rd, 2014, and I'm going to attach that as Exhibit A -- or -- strike that.**

MR. CARD: Exhibit 1, Madam Court Reporter.

BY MR. CARD:

**Q. Did you get a chance to review those deposition topics, ma'am?**

A. I have.

**Q. Okay. And are you prepared to testify as to all the topics that are listed in the notice of taking deposition?**

A. To the best of my knowledge.

**Q. Okay. So to the best of your knowledge, you're prepared to testify to all of the items named in the deposition topic list?**

MR. FALLON: As you know, Mr. Card, we've --

MR. CARD: No, I'm -- if you have an objection, make it.

MR. FALLON: I'm going to make a motion for protective order then on all topics that are not specific to the borrower in question or that go as to the general practices of Seterus or their

involvement in any prior litigation or any complaints made against the company irrelevant -- or, excuse me, not involving this borrower.

Such questions are, again, intended to embarrass, harass, annoy, and oppress my witness, and I will consider this deposition to be conducted in bad faith should you ask questions as to those areas, not specific to this borrower or that call for --

MR. CARD: I'm just --

MR. FALLON: -- to provide information -- to provide information on prior litigation or complaints, et cetera, made about the company --

MR. CARD: Well --

MR. FALLON: -- that have no bearing on Mr. Prescott's loan.

THE COURT REPORTER: Gentlemen, I'm not going to be able to have a clear record if you keep speaking over one another.

MR. FALLON: And that is correct.

MR. CARD: Then I apologize.

THE COURT REPORTER: Thank you.

MR. FALLON: And just to briefly, again, clarify, I am objecting and moving for a protective order and instructing my client not to answer any

questions that are general to Seterus' business practices, in contrast to their business practices in terms of the handling of this loan.

Questions of that -- of that nature are permissible. Questions that are general and not related to this loan are not, are unquestionably beyond the scope of the issues, and as such, I consider them posed in bad faith.

I'm also objecting for a protective order and instructing the client not to witness -- instructing the witness not to answer questions regarding prior litigation or complaints made against Seterus that involve other borrowers, not the Prescotts. Questions about the Prescott's issues are certainly permissible, but other borrowers are not.

They're unquestionably -- Those questions are unquestionably beyond the scope of the issues and intended to embarrass, harass, annoy, and oppress my witness.

MR. CARD: Are you done with your speech?

MR. FALLON: I'm done with my motion, yes.

MR. CARD: That wasn't a motion. That was a speech. A motion is filed with the Court.

MR. FALLON: I just filed it and will follow

up with a paper motion upon the completion of this depo.

MR. CARD: Okay. Madam Court Reporter, did you get the Notice of Taking Deposition listed as Exhibit 1?

THE COURT REPORTER: I did not have any exhibits attached. All I have is the Notice.

MR. CARD: I understand, but I'm -- just designated as No. 1.

THE COURT REPORTER: Yes, I did.

MR. CARD: I'll supply them all to you.

THE COURT REPORTER: Yes.

MR. CARD: Okay.

BY MR. CARD:

**Q. Ms. Lee, did you have the opportunity to review the complaint that Mr. Prescott filed against Seterus?**

A. Yes.

**Q. Okay. Did you have the opportunity to review the exhibits, which were A, B, and C -- like Charlie -- prior to today's deposition?**

A. Yes.

MR. CARD: Okay. Madam Court Reporter, I am going to attach the complaint along with a composite of Exhibits of A, B, and C as No. 2.

Okay?

THE COURT REPORTER: Yes, sir.

BY MR. CARD:

**Q. Ms. Lee, have you had the opportunity to review the answer to the complaint along with the affirmative defenses that Seterus filed in this particular claim?**

A. I did.

MR. CARD: Okay. Madam Court Reporter, I'm going to attach the answer and affirmative defenses as Plaintiff's Exhibit 3 to this.

BY MR. CARD:

**Q. Ms. Lee, do you agree with everything that was contained in the answer and the affirmative defenses that were asserted on behalf of Seterus?**

A. Yes.

**Q. Okay. Have you reviewed the documents that were produced in response to Plaintiff's discovery requests?**

A. Yes.

**Q. And were all of the documents that were produced truthful and accurate?**

A. Yes.

MR. CARD: Okay. Madam Court Reporter --

THE COURT REPORTER: I can't understand you.

Can you start over? You were messing with the mic. Can you start over?

MR. CARD: I'm sorry about that. Where did --

THE COURT REPORTER: That's okay. You were telling me, Madam Court Reporter -- you were going to tell me, I would assume, that you're marking those as an exhibit?

MR. CARD: Yes, ma'am, you're correct.

THE COURT REPORTER: Okay.

MR. CARD: For -- Plaintiff's Exhibit 4 is going to be the discovery responses that were produced by Seterus. Their authenticity was stipulated to. And for identification purposes, they're labeled as 000001, and they are through and including 000375.

I'm also producing or attaching as a composite the interrogatory responses, the written responses to the request for admissions, and also the written responses to discovery. And that's all No. 5.

THE COURT REPORTER: Okay.

MR. CARD: Thank you, ma'am.

THE COURT REPORTER: Uh-huh.

BY MR. CARD:

**Q. This is back to you, Ms. Lee. You've indicated that you've testified in deposition before; is**

**that correct?**
A. Yes.
**Q. And how many occasions, approximately?**
A. I've done several this year and a few back in 2009.
**Q. Okay. How many this year have you done?**
A. I'm going to estimate about four.
**Q. And then you said that you did a few in 2009?**
A. Yes. Five.
**Q. And do you know approx --**
A. Five.
**Q. I'm sorry. Five. Five in 2009?**
A. Yes.
**Q. And were any of those Fair Debt Collection Practices Act cases or Florida Consumer Collection Practices Act cases?**
A. They may be. I do not recall. But they're all foreclosure-related.
**Q. Okay. And you understand that this is an FDCPA and an FCCPA case?**
A. Yes.
**Q. Okay. And do you consider yourself to be knowledgeable with respect to those two statutes?**
MR. FALLON: Object to the form.
A. To the best of my knowledge. We -- I need

assistance from my attorney -- from our attorneys, of course.

BY MR. CARD:

**Q. Do you work frequently with Fair Debt Collection Practices Act claims?**

A. Occasionally but not daily.

**Q. Okay. And what about Florida Consumer Collection Practices Act claims?**

A. I've came across it, but it's not daily work.

**Q. Okay. And have you reviewed the Plaintiff's file at Seterus in preparation for today's deposition?**

MR. CHESHIRE: Object to the form of the question.

A. I did.

BY MR. CARD:

**Q. Okay. And have you reviewed any other documents in preparation for today's deposition?**

A. Can you be more specific?

**Q. Are there any other documents, other than what I've referenced, that you've reviewed in preparation for today's deposition?**

A. I reviewed loan comment logs again. I looked at the note and mortgage of this loan, some correspondences.

I looked at the basic history of this loan in

preparation for this deposition.

**Q. Okay. Now, does Seterus have a policy when they send documents to their customers of providing truthful information to the customers?**

A. Yes.

**Q. And to the best of your knowledge, are all of the documents that were sent from Seterus to the Plaintiff truthful and accurate?**

A. Yes.

**Q. Now, do you agree that the debt that Mr. Prescott owes to Seterus is for a personal mortgage?**

A. Yes.

**Q. In other words, it was for a home loan; would you agree with that?**

A. Yes.

**Q. Do you have any business loans whatsoever, to the best of your knowledge, with Mr. Prescott?**

A. Not that I'm aware of.

**Q. Okay. And would you agree that the complaint that we're here on is based on a home loan or a mortgage that Seterus is servicing?**

A. Yes.

**Q. Okay. Now, does Seterus own the actual loan for Mr. Prescott's mortgage?**

A. No.

**Q. Who owns the loan for the mortgage?**
A. Federal National Mortgage Association.
**Q. So would it be fair to say that you are servicing the mortgage on behalf of FNMA?**
A. Yes.
**Q. Okay. And are you aware of the correspondence that Seterus sent to Mr. Prescott on September 13th requesting a little over $15,000?**
MR. FALLON: Object to the form of the question.
A. Are you referring to the reinstatement letter that was sent?
BY MR. CARD:
**Q. I have -- Yes. I'm referring to Exhibit,, I believe, C on the complaint. Hold on one second. I'm referring to Exhibit B of the complaint, and it's dated September 4th, 2013. And it is requesting that Mr. Prescott pay $15,569.64.**
A. Yes.
**Q. Okay. And you reviewed that?**
A. I have.
**Q. Okay. And do you agree that Seterus sent that to the Plaintiff?**
A. Yes, I agree.
**Q. And do you agree that Seterus sent that to the**

**Plaintiff via US mail?**
A. Yes.
**Q. And do you agree that Seterus was attempting to collect a past-due balance?**
A. Yes.
**Q. Okay. And do you agree that you are collecting or attempting to collect that past-due balance of behalf of FNMA?**
A. Yes.
**Q. Okay. And do you agree that part of that past-due balance was for estimated legal fees in the amount of $3,175?**
A. Yes.
**Q. Okay. And do you agree that the Plaintiff paid you the exact amount you requested, which is $15,569.64?**
A. Yes, I'm aware.
**Q. Okay. And when did he pay that amount of money to Seterus?**
A. The wire came in Sept 26th, 2012.
MR. CARD: Okay, And, Madam Court Reporter, I'm going to attach the letter from Seterus to Mr. Prescott dated September 4th, 2013, as Plaintiff's Exhibit No. 6.
BY MR. CARD:

**Q. Ms. Lee, do you believe that all of the information and the representations in that letter were accurate and truthful?**

A. At that point in time, yes.

**Q. Okay. Did there come a point in time when they were not accurate and truthful?**

A. Well, we cap --

MR. CHESHIRE: Object to the form of the question.

A. We capture what is that point in time. Something may happen afterwards that were not captured on the letter.

BY MR. CARD:

**Q. Can you give me an example? Because I don't understand what -- the answer.**

A. For example, if we decide -- if we have to pay an insurance premium the day after we generated the letter or maybe two days after the letter, then that would make the letter outdated.

**Q. Understood. Okay. Ma'am, do you agree with me that at the bottom of this letter, it specifically states, this communication is from a debt collector? As we sometimes act as a debt collector, we are attempting to collect a debt and any information obtained for -- will be used for that purpose?**

A. Yes.
**Q. Do you agree that that's on the bottom of the letter?**
A. Yes, it is.
**Q. Okay. And do you agree that that is a truthful and accurate statement?**
A. Yes.
**Q. Okay. We were talking about the payment of that to you just a second ago, Ms. Lee. And are you -- did you review Exhibit C on Plaintiff's complaint whereupon he wired that amount of money to Seterus?**
A. Yes.
MR. CARD: Okay. Madam Court Reporter, I am going to attach Exhibit C as Plaintiff's Exhibit No. 7.
BY MR. CARD:
**Q. And by wire, it appears that the Plaintiff wired $15,569.64 to JP Morgan Chase Bank where you maintain an account. Is that accurate? Do you agree with that?**
A. Yes.
**Q. And do you agree that you received the money on or about September 26th, 2014?**
A. Yes.
**Q. Okay. And do you agree that part of that**

**15,000-plus dollars included $3,175 in estimated legal fees?**

A. It did.

**Q. Okay. And when -- on what specific date did Seterus incur $3,175 in legal fees?**

A. As stated in the reinstatement letter, it was an estimated fee.

**Q. Okay. It was an estimated fee for foreclosure?**

A. Yes.

**Q. Okay. And who estimated the legal fee to be $3,175?**

A. Our foreclosure attorney.

**Q. Okay. And how is your foreclosure attorney?**

A. Kahane and Associates.

**Q. Okay. And who specifically at Kahane and Associates estimated it at $3,175?**

A. I'm not sure of the particular individual, but it would come from their fees department.

**Q. Okay. And did there come a time when Seterus actually transferred $3,175 to Kahane and Associates?**

A. No.

**Q. Okay. So you received it from September 26th, 2014, and then retained the money; is that correct?**

A. Yes.

**Q. Okay. All right. Are you aware that the Plaintiff demanded the return of his $3,175 in his complaint and -- specifically in paragraph 13 of his complaint?**

A. Yes.

**Q. Okay. And you told me previously that Seterus responded to the complaint; is that correct?**

A. Yes.

**Q. And you told me previously that you agreed with everything in the response; correct?**

A. Correct.

**Q. Okay. And would you agree that Seterus refused to return Plaintiff's $3,175 in their answer to his complaint?**

A. No, I do not agree that Seterus refused to return that fund.

**Q. Okay. Can you point to me in -- Where did you agree to return Plaintiff's money in your -- in the answer to your complaint?**

A. No, I said we did not disagree to not return the fund. I'm a little confused.

**Q. Okay. Fair enough. We'll get back to it. Did there come a time when Seterus finally returned Plaintiff's $3,175?**

MR. CHESHIRE: Object to the form of the

question.

A. Yes.

BY MR. CARD:

**Q. Okay. And when was that?**

A. It was in November, I believe the 7th or the 17th.

**Q. Okay. And that was after the filing of the complaint; correct?**

A. Correct.

**Q. And that was after the filing of the answer; correct?**

A. I'm not sure when we filed the answer.

**Q. Okay. Would the date that was -- where the answer was filed on the court be an appropriate date?**

MR. FALLON: Hold on. Somebody's knocking on the door.

(DISCUSSION OFF THE RECORD.)

MR. CARD: I'm going to attach the check that was sent from Seterus back to Mr. Prescott as Plaintiff's Exhibit No. 9.

BY MR. CARD:

**Q. What date is written on the check, ma'am?**

A. I don't have a copy to review.

**Q. Okay. But you told me that you reviewed that prior to today's deposition; correct?**

A. Correct.

**Q. Okay. Ma'am, I am looking at a check. The number is 548057. It's in the amount of $3,175.00. It says Seterus, Inc., at the top, and the date on the check is November 14th, 2013. Would that be the date that you issued the check to the Plaintiff?**

A. I will take your word for it. I do not have the document to look with me.

**Q. Okay. You were about -- You're aware that that was one of the things that was specifically designated as a topic in your deposition notice; correct?**

A. I understand, but usually the documents are in front of me and I can refer to it, so if you're reading it right now, then I believe that the check is dated for November 14th. I said my memory recalls 7th or the 17th of November, but the 14th could be correct.

**Q. Okay. Okay. And who was involved in the decision to return the Plaintiff's $3,175?**

A. From my review, it was the invoicing department. They vouchered the check to send the refund back.

**Q. Okay. And they had had the Plaintiff's money by this date since September 26th, 2013, per your testimony; is that correct?**

A. Yes.

**Q. Okay. And did they issue the refund as a result of the litigation; in other words, that as of the complaint that the Plaintiff filed?**

A. I'm sorry, can you repeat that, again?

**Q. Yes, ma'am. Was the decision to issue the refund check as a result of the complaint that the Plaintiff filed?**

A. Based on my review, it does not appear to be that way.

**Q. Okay. Based on what -- in your review, what does it appear to be?**

A. I reviewed the loan, and it appears that the refund took its natural course. I did not see any documentation in the comment log indicating that legal department requested this refund to the customer.

**Q. Okay. What documents did you review that show what -- how this check came to be refunded to the Plaintiff?**

A. I reviewed our system of records, which is the comment log.

**Q. Okay. Have any of those been provided to me?**

A. In your discovery request, yes.

**Q. And you're saying that in the discovery request, those notes exist?**

A. Yes.

**Q. Okay.**

MR. FALLON: Let me just clarify. The current loans in the discovery are dated, I believe, through October of 2013. There are additional -- That was the time they were pulled in preparation to respond to your discovery request, or when the file was actually transferred to our office.

There do appear to be additional comment log -- log notes that are in existence from that date forward to the present if the loan is still being serviced. I believe Ms. Lee is referring to comments -- just based on the dates alone, referring to comment logs that do not appear yet to have been produced to your office. However, we will certainly do so following this deposition.

MR. CARD: Okay. Is there any reason they were not produced prior to today's deposition in accordance with local Rule 16.1?

MR. FALLON: They were discovered during preparation for today's deposition, and we're certainly happy to supplement our production with those records.

MR. CARD: Okay. I'm going to reserve the right to recall Ms. Lee to testify concerning those

additional documents.

BY MR. CARD:

**Q. Ms. Lee, is it fair to say that Seterus was placed on notice that they had $3,175 of Plaintiff's money when they received his complaint in September of 2013?**

A. Yes.

**Q. And why would it take them six weeks to return his money?**

A. Once the reinstatement figure is received, we instruct -- well, we close and billed the foreclosure case with Kahane and Associates. After that, they need to confirm of the final figure of outstanding fees. And they -- once they confirm that and let us know that that amount is not used, then we refund it to the customer.

**Q. Okay. And how much in total did you pay to Kahane and Associates for any foreclosure-related work they did on behalf of Seterus?**

A. $1,125.

**Q. Okay. That was the separate charge in the Plaintiff's complaint; is that correct?**

A. In the reinstatement figure, yes.

**Q. Yes, ma'am. Okay. So the -- for the $3,175, there's absolutely no legal work that was done to earn that fee; is that correct?**

A. Correct, because the foreclosure stopped prior to any work preceding that.

**Q. Okay. So there was -- So that we're clear, you agree that there was no legal work done for this $3,175, it was simply an estimate of legal fees to be done, and it was demanded from the Plaintiff and paid to Seterus on September 26th?**

MR. FALLON: Object to the form.

BY MR. CARD:

**Q. Is that accurate?**

MR. FALLON: You may answer.

A. Yes, because the foreclosure was stopped in time for any additional fees to incur with our attorney, foreclosure attorney, Kahane and Associates.

BY MR. CARD:

**Q. Okay. Well, let me just break this down one last time. For the $3,175, there was no legal work done to earn that; correct?**

A. Correct.

**Q. Okay. And yet it was demanded from the Plaintiff that he pay it; correct?**

MR. FALLON: Object to the form of the question.

A. Correct.

BY MR. CARD:

**Q. And what would have happened if he did not pay it?**

A. Then he would not have fully reinstated the loan, based on the letter that was provided, the reinstatement letter.

**Q. So if he did not pay these estimated legal fees, he would have been foreclosed on?**

A. No.

**Q. What would have happened?**

A. It would not have been --

**Q. His loan would not have been rein -- excuse me.**

**You said his loan would not have been reinstated unless he agreed to pay $3,175 in estimated legal fees?**

MR. FALLON: Object to the form of the question.

A. And other charges totaling the amount in the reinstatement letter.

BY MR. CARD:

**Q. Okay. I'm just talking about this $3,175.**

A. He has --

**Q. Is it -- Do you -- Do you agree that his loan would not have been reinstated unless he paid you $3,175 in estimated legal fees?**

A. My response is, he has to pay the full amount on the reinstatement letter in order to fully reinstate the loan, according to that letter, including --

**Q. Okay.**

A. -- the fee of $3,175.

**Q. Okay. Okay. When did you pay the $1,125 to Kahane and Associates?**

A. I do not recall that. But on the reinstatement quote, the date that was on there is the date that we vouchered the check to Kahane and Associates.

**Q. Okay. And what attorney at Kahane and Associates was handling this particular file?**

A. I do not know.

**Q. Okay. Did you receive invoices from Kahane and Associates, the corporation, or from one of the attorneys in particular?**

A. I did not see the invoice. I did not -- I did not handle it personally.

**Q. Okay. Somewhere there's an invoice that exists from Kahane and Associates for $1,125?**

A. Yes.

**Q. And has that been produced to me?**

A. No.

**Q. Why?**

MR. FALLON: Attorney-client privilege.
MR. CARD: A bill is attorney-client privilege?
MR. FALLON: It is -- It contains a full comment log of all steps taken on the file. It includes substantive review.
MR. CARD: Okay. Has there been a protective order entered for that particular bill, or has there been a redacted bill that does not have attorney-client privileged information provided to me?
MR. FALLON: The objection is -- to the document, is prospective in nature. There's been no request -- no request to produce for -- for invoices from the foreclosure firm.
MR. CARD: So it's your position that that was not requested in the request to produce?
MR. FALLON: It is.
MR. CARD: Okay.
BY MR. CARD:
**Q. So, ma'am, do we agree that somewhere in your file there's a bill for $1,125 from Kahane and Associates?**
A. Yes.
**Q. And somewhere in your file there is a check**

**that you wrote -- not you personally but Seterus wrote to Kahane and Associates for $1,125?**

A. Yes.

**Q. And why was that not produced to me?**

A. For the same reason the bill was not produced. I -- I did not see it in our response to productions.

**Q. You just told me that it exists, and now you're telling me that you didn't see it. So if you didn't see it, how do you know it exists?**

A. No. I said it was not produced in the response for production.

**Q. I'm aware of that. And my question is why?**

A. I do not know. Maybe it was not asked for. I'm not sure.

**Q. Okay. Do you agree that every dunning letter that was sent from Seterus to the Plaintiff specifically states on the bottom that Seterus is a debt collector?**

A. No. It says Seterus is -- can act as a debt collector sometimes. Sometimes is on there.

**Q. Okay. What is a debt collector? And let me -- let me just -- so that we're clear, I mean, I'm just going to --**

MR. FALLON: And may I --

MR. CARD:

**Q. -- go ahead and look.**

MR. FALLON: And while you're doing that, let me just back up. I just reviewed the request to produce, again. Request to produce in 11 did certainly contemplate -- just to correct my earlier statement, request to produce 11 did certainly contemplate the invoices related to --

MR. CARD: I know it did.

MR. FALLON: -- legal charges. I know it did, and I apologize for the incorrect statement earlier, and I'm correcting it now. I will inquire as to the whereabouts of that document. We do not have a copy of that document. And make sure that it's produced to you. However, we will need to redact that document on the basis of attorney-client privilege insofar as it reflects the substantive work done by the attorney or his opinions as to the case.

But I do -- and do correct my earlier statement, recognize it's contemplated by number 11, and I commit to supplementing our production to include copies of the invoice and the cancelled check.

MR. CARD: Okay. And I'm going to reserve the right to recall Ms. Lee to question her on that.

BY MR. CARD:

**Q. Now, Ms. Lee, I'm going to go back to a document that we both agree that you had read before, and it's the letter dated September 4th, 2013, from Seterus to Plaintiff in which you sought $15,569.64.**

**And I'm going to read verbatim, and I want you to listen to it, please. And it says -- it starts, this communication is from a debt collector, as we sometimes act as a debt collector. We are attempting to collect a debt, and any information obtained will be used for that purpose.**

**Do you agree that that specific language is on this letter?**

A. Yes, I agree.

**Q. Do you agree that it specifically says, this communication is from a debt collector?**

A. Yes.

**Q. Do you agree that every single dunning letter that you sent to Mr. Prescott specifically states that Seterus is a debt collector?**

A. And the sentence following after that, as well. Yes, I do agree.

**Q. Okay. Do you understand the concept -- content where it specifically says, this communication is from a debt collector?**

A. Yes.

**Q. Okay. So when you are collecting this debt from Mr. Prescott, were you acting as a debt collector?**

A. For that particular letter, yes.

**Q. Okay. And for this particular loan?**

A. Well, it depends on the type -- the letter that we sent. Not all notices --

**Q. This letter?**

A. The reinstatement letter?

**Q. Yes, ma'am.**

A. Yes. That one, yes.

**Q. Okay. So we agree that Seterus was acting as a debt collector in an attempt to collect a past-due loan on behalf of another party; is that correct?**

MR. FALLON: Object to the form of the question. You may answer.

A. Correct.

BY MR. CARD:

**Q. Okay. Then why in your discovery responses did you deny that Seterus was a debt collector?**

A. Seterus is sometimes a debt collector but not always a debt collector.

**Q. Okay. And in this particular instance, in this particular letter, in this particular file, do you agree that Seterus was acting as a debt collector?**

MR. FALLON: Object to the form of the

question. You may answer.
A. Yes.
BY MR. CARD:
**Q. Thank you. Do you believe that it is legal to bill Mr. Prescott $3,175 in estimated legal fees?**
MR. FALLON: Object to the form. It calls for a legal conclusion. You may answer.
A. I'm not sure.
BY MR. CARD:
**Q. So it may be legal and it may be illegal?**
MR. FALLON: Object to the form of the question. It calls for a legal conclusion.
A. I wouldn't call it illegal, but I'm not sure. I think it's the decision -- it's something that I usually consult with an attorney for.
BY MR. CARD:
**Q. Okay. And did you consult with an attorney for this particular client?**
A. After the fact.
**Q. No, before the fact.**
A. No.
**Q. Okay. So you engaged in conduct that you don't know whether it's legal or illegal without seeking the advice of counsel; is that correct?**
MR. FALLON: Object to the form of the

question.

A. No.

BY MR. CARD:

**Q. Well, do you -- then maybe I misunderstood you. Seterus is sending these dunning letters to my client as late as September 4th, 2013; correct?**

A. Correct.

**Q. And you're trying to collect something that I have never seen, which is estimated legal fees; correct?**

A. Correct.

**Q. Did you seek advice of counsel to see if that was legal to do?**

A. No.

**Q. Okay. So do you --**

MR. FALLON: So let me just clarify the question. Are you -- Are you asking the question with regards to outside counsel, as I believe Ms. Lee is interpreting your question to be, or are you -- any --

MR. CARD: No, just -- I'm not here to answer questions, just ask them.

MR. FALLON: Well, the question was ambiguous on that point.

MR. CARD: Okay. Then you should make an objection --

MR. FALLON: I am.
MR. CARD: -- not speaking.
MR. FALLON: I'm making an objection now.
MR. CARD: Okay. Make a legal objection, not a long soliloquy.
BY MR. CARD:
**Q. Ma'am, do you -- is it Seterus' policy to immediately bill estimated legal fees once a loan goes into default?**
A. No.
**Q. So this is something that was done solely to Mr. Prescott?**
A. No, it's not.
**Q. Okay. So is -- how do you determine that you are going to bill Mr. Prescott $3,175 in estimated legal fees?**
A. When Mr. Prescott ordered the reinstatement figure, we went to Kahane and Associates and requested updated fees and costs. Because the reinstatement quote is good for an amount in the future, they have to include a cost that is about to happen in the future, as well. That's where the $3,175 came to.
**Q. Do you have a flat fee agreement with Kahane and Associates?**
A. Per stages of foreclosure.

**Q. Okay. And what stage of foreclosure was Mr. Prescott in?**

A. To start off, it was the $1,125. Mr. Prescott about to enter in the next step, and that's why the 300 -- $3,175 was quoted.

**Q. Okay. And -- But he never entered into the next step, as you call it, did he?**

A. No, because he reinstated the loan fully.

**Q. Okay. And so that I know, what -- when you say the next step, what does that mean?**

A. Well, up to the point, the title was ordered. And the next step will be for their title department or attorney at the firm, Kahane and Associates, to review title clearing and proceed with the foreclosure.

**Q. That's -- That's the next step that you're referring to?**

A. Correct.

**Q. Okay. And -- And nobody at Kahane and Associates ever did any of that work?**

A. No, because the loan reinstated and we closed and billed.

**Q. Okay. And is it -- is it your normal practice that when a loan goes into default you automatically charge $1,125 and then you automatically charge $3,175 in estimated legal fees?**

MR. FALLON: Are you asking about Mr. Prescott's loan? I've objected to general questions, and it's subject to my earlier protective order -- or motion for a protective order, I should say.

BY MR. CARD:

**Q. That would -- You can -- Ma'am, if you are going to refuse to answer, just let me know.**

MR. FALLON: I'll permit answer to the question.

MR. CARD: Oh, okay.

BY MR. CARD:

**Q. Then go ahead, ma'am.**

A. I've reviewed it based on Mr. Prescott's loan. I can't speak on another file.

**Q. Okay.**

A. But, yes, it is $1,125 to initiate the foreclosure after the notice of -- notice of intent to foreclose has expired and the loan was not reinstated at the time. The $1,125 is when we refer the file to the attorney, and it's their -- it's to start the work on the foreclosure.

**Q. Okay. So the process is, is you send -- what specifically do you transmit to Kahane and Associates for them to start the foreclosure proceedings?**

A. I am not involved in that department, but I was trained -- I trained with them. They sent a referral over. We sent a copy of the mortgage. We start ordering the actual note, the wet ink-signed note and mortgage to the firm. The firm starts drafting up a notice to Mr. Prescott to let him know that we have initiated foreclosure. That's in general. There's much more behind-the-scene work.

**Q. Okay. And is that submitted electronically, or is it submitted by mail?**

A. Certain information is submitted electronically. Of course, the original note and mortgage is by mail.

**Q. Okay. And you -- in each instance, you billed the $1,125 on the same day that you transmit the information to Kahane and Associates; is that correct?**

MR. FALLON: Object to the form of the question.

A. I have to check to see when we actually paid Kahane and Associates. I can't give you that answer at the time -- at this time.

BY MR. CARD:

**Q. In this particular claim, when did you pay the 1,125 to Kahane and Associates?**

A. It's on the reinstatement letter. I don't

have it with you [sic]. But the date that was -- is on the reinstatement letter is when we paid it to Kahane -- we invoiced and vouchered to Kahane and Associates.

**Q. In your file, do you have any document in which Mr. Prescott agreed in writing to be billed for estimated legal fees?**

A. Yes.

**Q. What -- What specifically is it?**

A. It's the mortgage, paragraph -- I'm going to say 7, 9, and 11, but it's a couple of the paragraphs in the mortgage itself that he signed at origination.

**Q. And, first of all, you're saying that in the mortgage that Mr. Prescott specifically agreed that he would be responsible for $3,175 in estimated legal fees?**

A. Well, not estimated, but anything that led up to us needing to collect or fully accelerate the debt. There are estimated -- or not estimated, I'm sorry, legal fees that he needs to -- that he needs to pay.

**Q. Okay. And did he agree to pay actual legal fees that had been incurred, or did he agree to pay estimated legal fees?**

A. I believe the mortgage did not say if it's actual or estimated. It just says legal fees.

**Q. Okay. Let me reask the question. Is there any contractual agreement that you're aware of that Mr.**

**Prescott specifically agreed to pay for estimated legal fees?**

A. No.

**Q. Okay. So we agree that that document does not exist?**

A. No.

**Q. When you say no, you mean you're agreeing with me that that document does not exist?**

A. Mr. Prescott did not sign anything agreeing to pay estimated legal fees.

**Q. Okay. Did he give his consent in any manner to pay for estimated legal fees?**

A. If he paid the reinstatement figure -- typically a customer will call in if they have an issue with the fee on the reinstatement. But he paid it. So paying it is agreeing with the figure that we provided.

**Q. So you believe that the figure that you provided was correct?**

A. At that point in time when we estimated that figure. That figure is good through a future date, and during that future date, things may happen, like I mentioned previously, that have not occurred.

**Q. I understand that, and I appreciate that. But what I want to know is, is there any -- other than him paying the figure -- let's -- I'm eliminating that. Is**

**there any agreement whatsoever in between Seterus and Mr. Prescott where he specifically agrees to pay for estimated legal fees?**

A. No. There is not a signed agreement where he agreed to pay the estimated legal fees.

**Q. Okay. Other than him having to make the payment or making the payment, is there any verbal agreement that you're relying on?**

A. No.

**Q. Okay. And are you aware of the Fair Debt Collection Practices Act, and specifically are you aware of 15 USC 1692(F)(1)?**

A. No, I don't remember it by heart. I would have to review it.

**Q. Okay. Did you review it prior to today's deposition?**

A. I have, but I do not recall right now.

**Q. Okay. Let me ask you this. Do you agree that it is a violation of 15 USC 1692(F)(1) to attempt to collect a debt from a Plaintiff -- from a Plaintiff that it does not expressly authorize by the agreement creating the alleged debt?**

MR. FALLON: Object to the form of the question. It calls for a legal conclusion. If you know, you may answer.

A. I do not agree, because if he made the full reinstatement, he agreed with that figure, so that's my answer.

BY MR. CARD:

**Q. Okay. So if you had billed him a million dollars and said we're not going to reinstate your loan unless you pay the million dollars, you believe that would be legal?**

A. If it was my loan, I would call and ask why was I billed a million dollars.

**Q. Okay. And did -- at any time did Mr. Prescott call in to dispute the attorney's fees?**

A. I recall him calling in to ask about the fees on the loan because it increased from the prior reinstatement figure to the latest reinstatement figure in September 4th, and we advised him that it is the legal fee charged for that state.

**Q. The legal fee charged for the state, and do you mean the State of Florida?**

A. Correct.

**Q. Okay. So -- So Kahane and Associates -- Is that just with Seterus, or is that Kahane and Associates?**

A. Well, legal fees could be different in Georgia versus Florida. I think it was a general statement

because legal fees for another state may be less and foreclosure -- we're trying to tell him the fee that we charged him is the fee according to that state.

**Q. So the State of Florida is responsible for this fee, is what you're saying?**

A. No. The State of Florida is -- is a judicial state, so we have to file it with the court, we have to pay filing fees, and we have to pay title search fees to initiate the foreclosure.

**Q. Okay. And did you pay filing fees in this particular case?**

A. I'd have to check.

**Q. Okay. So you don't know as we're sitting here?**

A. Not right now.

**Q. Okay. You do realize that was one of the things that was noticed for today's deposition?**

A. I am aware of the fees that are on the -- I familiarized myself with the fees that are on the reinstatement figure the --

**Q. Okay.**

A. -- ones that we charged.

**Q. Okay. Well -- let's see. On the Bates-stamped document that was produced to me, number 000318, would you agree with me that the entry says, in relevant**

**part, customer voiced concerns regarding attorney's fees. Advised customer that the fees are placed on the loan immediately once foreclosure is placed on the loan. Is that accurate?**

A. That -- I recall reading that message or that comment log.

**Q. So do you agree with that particular statement?**

A. Yes.

**Q. And you agree that that's what was done in this particular claim?**

A. The date that we paid Kahane and Associates on the reinstatement figure for the $1,125, that's when it happened.

**Q. Okay. And then the $3,175, that was on September 4th, 2013; correct?**

A. I would have to look at the reinstatement figure.

THE WITNESS: Sir, can I?

A. We paid Kahane and Associates on August 22nd, 2013.

BY MR. CARD:

**Q. Okay. That was the 1,125?**

A. Yes.

**Q. And when -- you never paid Kahane and**

**Associates the 3,175?**

A. Correct.

**Q. Does Kahane and Associates place the money in trust or in an operating account?**

A. I do not handle their finances. I do not know.

**Q. Fair enough. Do you know who handles their finances?**

A. I do not.

**Q. Now, the -- my client was calling in and complaining, and I see that there's a bunch of different user names in your -- in your log activity. Are those employees of Seterus, ma'am?**

A. Yes.

**Q. Okay. And who specifically is -- I'm just going to spell it for you, F-r-e-e-m-a-n-t. I guess you pronounce it Freemant.**

A. I do not know that individually -- individual personally, but it is, I'm going to assume, a call -- call center rep, an agent that took the phone call.

**Q. Okay. And I see there's a lot of different people that called my client. Are you familiar with that?**

A. Yes.

**Q. And the purpose of these telephone calls to my**

**client, are they to collect a past-due debt?**
A. Or to talk to him to see if he needed assistance on the modification. There could be a range of reasons.
**Q. Okay. And in this particular claim, were your representatives calling the client on the telephone to collect a past-due debt?**
A. Yes.
**Q. Okay. And all of these individuals that are listed in here, are their jobs -- are they basically debt collectors?**
MR. FALLON: Object to the form of the question.
A. No.
BY MR. CARD:
**Q. What are they?**
A. Everyone may have a different -- people -- they may have a different title. They may be customer service agent, they may be loss mitigation agent. We don't have a job title that's a debt collector.
**Q. So you just don't call them debt collectors. But do you agree that some of these people were calling Mr. Prescott specifically to collect a past-due debt?**
A. We call to -- hello? Are you there?
**Q. Yes, ma'am.**

A. You froze for a little bit. I'm sorry. We called to discuss the past-due balance, but at the same occasion, we also speak to him to see if he needed assistance to a modification because he did indicate to us his hardship may be long-term.

**Q. Okay. And so when you say you called to discuss a past-due balance, would part of that call be to have him make payment to Seterus on that past-due balance?**

A. That's part. That's one question that we ask.

**Q. Okay. And where is this call center located at, ma'am?**

A. We have a few locations.

**Q. Okay. And so were there different call centers calling Mr. Prescott?**

A. I did not --

**Q. -- or just one call center?**

A. I did not look into that.

**Q. Okay. How many dunning letters -- and by dunning letters, I mean letters in which you're saying that he is past due -- did Seterus send to the Plaintiff in the past two years before the filing of the complaint?**

A. I did not count.

**Q. Do you have an approximation?**

A. No, I do not want to make an estimation. But when he's past due, those letters automatically go out, triggered by the system.

**Q. Okay. And do you agree that the Bates-stamped document 00319, which is dated July 23rd, says, the foreclosure is approved?**

A. One second. Is that an exhibit?

**Q. Yes, ma'am. It is Bates-stamped document 000319, and specifically it is Plaintiff's Exhibit 5.**

A. Yes, I see it.

**Q. Okay. Once a -- Who approves a foreclosure?**

A. The pre-foreclosure department.

**Q. And who specifically is that?**

A. One second. It would be whoever made that entry in the log.

**Q. And do you know who that is?**

A. One second. Let me review it again. It says Park SS or S Parks. I do not know that person personally.

**Q. Do you know any of the debt collectors personally that appear in this discovery?**

MR. FALLON: Object to the form of the question.

A. I recognize a few names from different departments.

BY MR. CARD:

**Q. Okay. And who do you recognize?**

A. I recognize Jay Cabaza.

**Q. Can you spell that for me, ma'am?**

A. Let me refer you to the entry. He is a Safe officer, also known as an underwriter or a loss mitigation officer. His entry was on Sept 5th, 2013.

There are other individuals I do not recognize, that I have not personally worked with. There's individuals in the letters department that I'm aware of. I recognize an entry on April 27th, 2013, by a Landony (phonetic). I do not know his current position at this time. He's been with the company for a while and he has several positions, so I'm not sure what his position was on April 27th, 2013.

It looks like Feb 18th, Hong, H-o-n-g --

**Q. Okay.**

A. -- did some skip searching -- searches. James Hong.

**Q. And what were the skip searches for?**

A. If the loan is past due and we made multiple attempts to try to reach the customer, we try to do a skip search to see maybe if there is a better number that we could be calling or to make sure the number we have in our system is up to date.

This is just a few people that I recognize just skimming through the document. There may be a couple more, but there are some individuals I don't recognize, as well.

**Q. Okay. Ma'am, would you agree that Kevin Prescott is a consumer that purchased a residential property that is the subject of this complaint?**

A. I would consider him financing the property but not purchased, because he didn't finish paying the loan.

**Q. Exactly. Okay. Would you agree that he is a consumer who financed a residential property that forms the basis of this complaint?**

A. Yes. I agree.

**Q. Okay. And just so that we're clear, can you tell me specifically where the home at issue is located at?**

A. 9800 Southwest 16th Court, Pembroke Pines, Florida 33025.

**Q. Okay. And just so we're clear, that is the specific property that Seterus is providing servicing for?**

A. Correct.

**Q. Okay. And before you told me that the mortgage is actually owned -- I forgot the acronym.**

**FNMA, I believe. Is that correct?**
A. FNMA, Fannie Mae.
**Q. F --**
A. Federal National --
**Q. Fannie Mae, okay.**
A. Yeah. Federal National Association.
**Q. Okay. And how -- did anybody own the loan prior to Fannie Mae?**
A. Yes, the originator of the loan.
**Q. Okay. And who was that?**
A. One second. Bank of America, N.A.
**Q. And when did Fannie Mae become the owner of the mortgage?**
A. Soon after origination. I have to check my record. I don't remember it off the top of my head.
**Q. Okay. Was this property -- Was the loan securitized and sold?**
A. No.
**Q. No, okay. Just a simple -- a straight transfer of ownership?**
A. Correct.
**Q. Okay. Other than the $1,125 that you and I already talked about, were there any other legal bills that Seterus has incurred in this case?**
A. Yes, to our firm that's representing us today

and representing us in this matter.

**Q. Okay. But prior to the complaint being filed, were there any other legal fees that Seterus had incurred in servicing this loan?**

A. No.

**Q. Okay. The amount that you were collecting on September 3rd, 2013, did that include force-placed insurance?**

A. Let me look. No, it did not.

**Q. Are you positive about that?**

A. There was no force-place insurance listed on the reinstatement letter.

**Q. At any time that Seterus was servicing the loan, did Seterus collect funds for force-placed insurance?**

A. In my review, I did recall that, but it was not listed on the reinstatement letter.

**Q. Okay. When I was going through your discovery, ma'am, with respect to the property inspections, they all say that they are submitted via bulk order. What does that mean?**

A. That means we gather all the loans that needs inspection. We send it in a group, bulk, to Safeguard, our property inspection company, so they can create work -- work orders for the field agents to go inspect the

property.

**Q. Okay. So there's an actual individual that -- a field agent, as you call it, that drives out and inspects the property?**

A. Yes.

**Q. Okay. So it's your testimony under oath that an actual human being drove out to that property for every one of those property inspections you billed the Plaintiff for?**

A. Yes.

**Q. Okay. And have you reviewed all of the property inspection reports?**

A. I have. Yes, I have.

**Q. Would you agree that they all say essentially the exact same thing?**

A. No, they do not.

**Q. Okay. And what noticeable differences do you see in them? Well, certainly the grass -- I notice that the grass is always exactly 1-inch tall.**

A. Well --

**Q. Is that part of your thing, is to measure the grass?**

A. If the grass is overgrown, there is a duty by the Safeguard agent to report it to us so we can order the grass to be mowed, because we could be getting city

violations for the grass being overgrown. So if the grass is an acceptable length, then they're letting us know that it's being kept.

**Q. Okay. And how much do you pay for these property inspections?**

A. $15.

**Q. Okay. So for $15, there's an in -- are they independent contractors, this company, Safecare?**

MR. FALLON: Object to the form.

A. Safeguard Property is the vendor we use, and Safeguard, I don't know how their business model is, who they hire, if they're independent contractors or if they are permanently employed. I don't know.

BY MR. CARD:

**Q. Okay. And I notice that the property inspection reports say that there is photos attached. Do you have any of those photos in your possession?**

A. Yes.

**Q. Okay. And were those produced to me?**

MR. FALLON: Yes, at 373.

BY MR. CARD:

**Q. Are these all the different property inspections?**

A. Yes.

**Q. Okay. And so an individual drove out there**

**and took these pictures on each of those dates?**

A. Correct.

**Q. That's how the procedure works?**

A. Yes.

MR. CARD: Okay. We're going to take a quick break, and then we'll be back in five minutes.

MR. FALLON: All right.

THE COURT REPORTER: The time now is 11:33, and we are off the record.

(RECESS.)

THE COURT REPORTER: The time now is 11:43, and we are back on the record.

BY MR. CARD:

**Q. Ms. Lee, we're back on the record, and just so that you know, you're still under oath and you're still giving sworn testimony just as before. You understand that; correct?**

A. Yes.

**Q. Okay. I just want to cover two quick things. We agree that the Plaintiff has never agreed in any form to pay for estimated legal fees; correct?**

MR. FALLON: Object to the form. Asked and answered. You can answer.

A. Well, I -- my perspective is a little bit different than yours, but he did not verbally or --

signed anything that says he agreed to the fees, but me, the way I see it is that if he paid the -- the fee that was stated in the reinstatement quote, then he had no objections to it.

BY MR. CARD:

**Q. Okay. But that's not my question. My question is: There is no agreement of any kind that exists in which Mr. Prescott agreed to pay for estimated legal fees --**

MR. FALLON: Object to the form of the question.

BY MR. CARD:

**Q. -- correct?**

A. Correct.

**Q. Okay. And we've also agreed that Kahane and Associates performed absolutely no legal work for the $3,175 that Plaintiff was billed for; is that correct?**

MR. FALLON: Object to the form of the question.

A. Correct.

MR. CARD: Okay. I don't have anything else.

(THE DEPOSITION CONCLUDED.)

CERTIFICATE OF OATH

STATE OF NORTH CAROLINA

COUNTY OF JOHNSTON

I, Wan-I Jenny Lee, do hereby state under oath that I have read the above and foregoing deposition in its entirety and that the same is a full, true and correct transcript of my testimony. Signature is subject to corrections on attached errata sheet, if any.

Wan-I Jenny Lee,

Sworn to and subscribed before me this day of September 23, 2014.

Notary Public
My commission expires: 12/10/18

CERTIFICATE

State of North Carolina

County of Johnston

I, Leslie Kujawa, a notary public in and for the State of North Carolina, do hereby certify that there came before me on the 23rd day of September, 2014, the person hereinbefore named, who was by me duly sworn to testify to the truth and nothing but the truth of her knowledge concerning the matters in controversy in this cause; that the witness was thereupon examined under oath, the examination reduced to typewriting. I further certify that I am not counsel for, nor in the employment of any of the parties to this action; that I am not related by blood or marriage to any of the parties, nor am I interested, either directly or indirectly, in the results of this action. In witness whereof, I have hereto set my hand and affixed my official notarial seal, this the 13th day of October, 2014.

Leslie Kujawa
Notary Public

$

**$1,125** 32:19 35:6,21 36:22 37:2 44:3,24 45:17,20 46:15 52:13 59:22

**$15** 62:6,7

**$15,000** 22:8

**$15,569.64** 22:18 23:16 25:18 39:4

**$3,175** 23:12 26:1,5,12,17,21 27:2,13,24 29:19 32:4,23 33:5,17 34:14,21,24 35:5 41:5 43:15,22 44:5,24 47:14 52:15 64:17

**$3,175.00** 29:3

0

**000001** 18:14

**000318** 51:24

**000319** 56:9

**000375** 18:15

**00319** 56:5

1

**1** 13:7 16:5,9

**1,125** 46:24 52:23

**10** 4:5

**10:16** 1:18

**100** 2:4

**11** 38:3,5,20 47:10

**11:33** 63:8

**11:43** 63:11

**110** 2:9

**12/10/18** 65:11

**13** 27:3

**13-62338-CIV-ROSENBAUM** 1:3

**13th** 22:7 66:19

**14th** 29:5,16,17

**15** 4:3 49:12,19

**15,000-plus** 26:1

**16.1** 31:19

**1692(F)(1** 49:12,19

**16th** 58:18

**1700** 2:9

**17th** 28:6 29:16

**18** 4:4

**18th** 57:16

**1-inch** 61:19

2

**2** 4:5 16:25

**2009** 19:5,8,12

**2010** 5:13

**2012** 23:20

**2013** 22:17 23:23 29:5,24 31:5 32:6 39:3 42:6 52:16,21 57:7,11,15 60:7

**2014** 1:18 13:5 25:23 26:24 65:10 66:7,19

**22nd** 52:20

**23** 1:18 65:10

**23rd** 56:5 66:7

**2501** 2:4

**2530** 1:16

**26th** 23:20 25:23 26:23 29:24 33:7

**27th** 57:11,15

3

**3** 17:11

**3,175** 53:1

**30(d)(3** 11:1 12:2

**30.1(a)(3** 8:22

**300** 44:4

**33020** 2:5

**33025** 58:19

**33301** 2:9

**373** 62:20

**3rd** 13:5 60:7

4

**4** 18:10

**4th** 22:17 23:23 39:3 42:6 50:16 52:16

5

**5** 3:2 18:19 56:9

**548057** 29:3

**553-8082** 2:10

**5th** 57:7

6

**6** 23:24

7

**7** 4:3 25:15 47:10

**786** 2:10

**7th** 28:5 29:16

9

**9** 4:4 28:20 47:10

**921-9994** 2:5

**954** 2:5

**9800** 58:18

A

**a.m** 1:18

**able** 14:18

**absolutely** 32:24 64:16

**accelerate** 47:16

**acceptable** 62:2

**accordance** 31:19

**according** 35:3 51:3

**account** 25:19 53:4

**accurate** 17:22 21:8 24:3,6 25:6,19 33:10 52:4

**acronym** 58:25

**across** 20:9

**act** 19:15,16 20:5,8 24:23 37:18 39:8 49:11

**acting** 40:2,11,24

**action** 66:14,17

**activity** 53:12

**actual** 21:23 46:4 47:19,23 61:2,7

**actually** 26:21 31:8 46:19 58:25

**additional** 31:5,9 32:1 33:13

**address** 10:2 11:11

**admissions** 18:18

**advance** 13:4

**advice** 41:24 42:11

**advised** 50:16 52:2

**advising** 12:1

**affirmative** 17:6,10,14

**affixed** 66:18

**afterwards** 24:11
**against** 5:19 14:2 15:13 16:16
**agent** 53:20 54:19 61:3,24
**agents** 60:25
**ago** 25:9
**agreed** 7:15 27:9 34:14 47:5,13 48:1 49:5 50:2 63:20 64:1,8,15
**agreeing** 48:7,9,16
**agreement** 43:23 47:25 49:1,4,8,21 64:7
**ahead** 37:25 45:13
**alcohol** 6:15
**alleged** 49:22
**alone** 31:13
**already** 59:23
**am** 6:25 8:8 14:24 16:23 25:13 29:2 43:1 46:1 51:18 66:13,14,16
**ambiguous** 42:22
**America** 59:11
**amount** 23:12,15,18 25:11 29:3 32:15 34:18 35:1 43:20 60:6
**annoy** 10:24 12:5 14:5 15:19
**answer** 6:17,25 8:24 9:4,19 10:11,14 14:25 15:11 17:5,10,14 24:15 27:13,19 28:10,12,14 33:11 40:15 41:1,7 42:20 45:8,9 46:20 49:25 50:3 63:23
**answered** 63:23
**answering** 6:9
**anybody** 59:7
**anything** 6:16 7:25 10:13 12:21 47:15 48:9 64:1,21
**apologize** 14:21 38:9
**apparently** 11:4
**appear** 12:23 30:9,12 31:9,14 56:21
**APPEARANCES** 2:1
**appearing** 2:2
**appears** 25:17 30:13
**appreciate** 48:23
**appreciated** 6:10
**appropriate** 8:25 28:14
**approved** 56:6
**approves** 56:11
**approx** 19:10
**approximately** 19:3
**approximation** 55:25
**April** 5:13 57:11,15
**areas** 14:8
**arrested** 12:9
**asserted** 17:15
**assistance** 20:1 54:3 55:4
**Associates** 26:15,17,21 32:12,17 33:14 35:7,11,13,16,21 36:23 37:2 43:18,24 44:13,19 45:24 46:16,20,24 47:3 50:21,23 52:12,20 53:1,3 64:16
**Association** 22:2 59:6
**assume** 11:12 18:6 53:19
**attach** 13:5 16:24 17:10 23:22 25:14 28:18
**attached** 16:7 62:16 65:7
**attaching** 18:16
**attempt** 40:12 49:19
**attempting** 23:3,7 24:23 39:8
**attempts** 57:22
**attend** 12:18,20
**attorney** 5:18 7:16 20:1 26:13,14 33:13,14 35:12 38:14,16 41:15,17 44:13 45:21
**attorney-client** 36:1,2,10
**attorneys** 20:1 35:17
**attorney's** 50:12 52:1
**August** 52:20
**authenticity** 18:12
**authorize** 49:21
**automatically** 44:23,24 56:2
**aware** 21:18 22:6 23:17 27:1 29:9 37:12 47:25 49:10,11 51:18 57:11

**B**

**bad** 12:4 14:7 15:8
**balance** 23:4,8,11 55:2,7,9
**Bank** 25:18 59:11
**based** 21:20 30:9,11 31:13 34:4 45:14
**bases** 8:10
**basic** 5:24 20:25
**basically** 54:10
**basis** 8:9,16 9:12 11:7 38:14 58:13
**Bates** 51:23
**Bates-stamped** 56:4,8
**bearing** 14:15
**become** 59:12
**Beginning** 1:18
**behalf** 2:2,7 17:15 22:4 23:8 32:18 40:13
**behind-the-scene** 46:8
**Beiramee** 2:8
**believe** 22:15 24:1 28:5 29:15 31:4,12 41:4 42:17 47:22 48:17 50:7 59:1
**best** 13:15,16 19:25 21:6,17
**better** 57:23
**beyond** 11:20 15:7,18

**bill** 36:2,8,9,22 37:5 41:5 43:8,15
**billed** 32:11 44:21 46:14 47:5 50:5,10 61:8 64:17
**bills** 59:23
**birth** 9:18 11:11
**bit** 55:1 63:24
**blood** 66:15
**Blvd** 2:4,9
**borrower** 13:24 14:3,8
**borrowers** 15:13,16
**bottom** 24:21 25:2 37:17
**break** 33:16 63:6
**briefly** 14:23
**Broward** 2:9
**bulk** 60:21,23
**bunch** 53:11
**business** 15:1,2 21:16 62:11

C

**Cabaza** 57:3
**cancelled** 38:21
**cap** 24:7
**capture** 24:10
**captured** 24:11
**Card** 2:3 3:2 5:4,17 7:14,20,24,25 8:2,3,5,6,16,19 9:8,13,15,17,24 10:1,7,9,13,16,19, 20,21,22 11:3,8,17 12:7,8 13:7,8,19,20 14:10,14,21 15:21,23 16:3,8,11,13,14,2 3 17:3,9,12,24 18:3,8,10,21,23 20:3,15 22:13 23:21,25 24:13 25:13,16 28:3,18,21 31:17,24 32:2 33:9,15,25 34:20 36:2,7,16,19,20 37:24 38:7,23,25 40:17 41:3,9,16 42:3,20,24 43:2,4,6 45:6,11,12 46:22 50:4 52:22 54:15 57:1 62:14,21 63:5,13 64:5,12,21
**Carolina** 1:17,25 65:2 66:2,6
**case** 1:3 11:21 19:20 32:12 38:17 51:11 59:24
**cases** 19:15,16
**cause** 6:16 66:11
**center** 53:20 55:11,17
**centers** 55:15
**Certain** 46:11
**certainly** 11:22 15:15 31:16,22 38:4,5 61:18
**CERTIFICATE** 65:1 66:1
**CERTIFIED** 4:1
**certify** 7:20 9:24 10:7 66:6,13
**cetera** 14:13
**chance** 13:9
**charge** 32:20 44:24
**charged** 50:17,18 51:3,22
**charges** 34:18 38:8
**Charlie** 16:20
**Chase** 25:18
**check** 28:18,22 29:2,5,6,15,21 30:7,18 35:10 36:25 38:22 46:19 51:12 59:14
**CHESHIRE** 20:12 24:8 27:25
**city** 61:25
**civil** 11:9
**claim** 17:7 46:23 52:11 54:5
**claims** 20:5,8
**clarify** 14:24 31:3 42:15
**clean** 6:10
**clear** 11:24 14:18 33:3 37:21 58:15,20
**clearing** 44:14
**client** 14:25 15:10 38:15 41:18 42:6 53:10,22 54:1,6
**clients** 9:5
**close** 32:11
**closed** 44:20
**collect** 23:4,7 24:24 39:8 40:12 42:8 47:16 49:20 54:1,7,23 60:14
**collecting** 23:7 40:1 60:6
**Collection** 19:14,15 20:5,8 49:11
**collector** 24:22,23 37:17,19,20 39:7,8,15,19,24 40:2,12,19,20,21, 24 54:20
**collectors** 54:11,21 56:20
**coming** 7:21 9:25 10:8
**comment** 20:22 30:15,21 31:9,14 36:5 52:6
**comments** 31:13
**commission** 65:11
**commit** 38:20
**communication** 24:22 39:7,15,23
**company** 14:2,13 57:13 60:24 62:8
**complaining** 53:11
**complaint** 16:16,24 17:5 21:19 22:15,16 25:10 27:3,4,7,14,19 28:8 30:4,7 32:5,21 55:23 58:7,13 60:2
**complaints** 14:2,13 15:12
**completely** 11:20
**completion** 16:1
**composite** 16:25 18:16
**concept** 39:22
**concerning** 31:25 66:10
**concerns** 52:1
**CONCLUDED** 64:22
**conclusion** 41:7,12 49:24

**conduct** 41:22
**conducted** 14:6
**conferences** 12:21
**confirm** 32:13,14
**confused** 27:21
**consent** 48:11
**consider** 14:6 15:8 19:22 58:8
**consult** 41:15,17
**consumer** 2:4 19:15 20:7 58:6,12
**contact** 11:19 12:22
**contacted** 8:10 11:18
**contained** 17:14
**contains** 36:4
**contemplate** 38:4,6
**contemplated** 38:19
**content** 39:23
**continue** 6:8 10:25 11:24
**continues** 12:4
**contractors** 62:8,12
**contractual** 47:25
**contrast** 15:2
**controversy** 66:10
**convicted** 12:10
**copies** 38:21
**copy** 28:23 38:12 46:3
**corporate** 11:15 12:22,25
**corporation** 35:16
**correct** 7:7,18 8:18 13:1 14:20 18:8 19:1 26:24 27:7,10,11 28:8,9,11,25 29:1,12,17,25 32:21,25 33:1,18,19,21,24 38:4,18 40:13,16 41:24 42:6,7,9,10 44:17 46:16 48:18 50:20 52:16 53:2 58:23 59:1,21 63:2,17,21 64:13,14,17,20 65:6
**correcting** 38:10
**corrections** 65:7
**correctly** 7:5
**correspondence** 22:6
**correspondences** 20:24
**cost** 43:21
**costs** 43:19
**counsel** 2:1 41:24 42:11,17 66:13
**count** 55:24
**County** 65:3 66:3
**couple** 5:21 47:10 58:3
**course** 20:2 30:14 46:12
**court** 1:1,24 6:3 11:23 13:7 14:17,22 15:24 16:3,6,10,12,23 17:2,9,24,25 18:4,5,9,20,22 23:21 25:13 28:14 51:7 58:18 63:8,11
**cover** 5:24 63:19
**create** 60:24
**creating** 49:22
**crimes** 12:10
**current** 31:3 57:12
**customer** 30:16 32:15 48:14 52:1,2 54:18 57:22
**customers** 21:3,4

D

**daily** 20:6,9
**dash** 5:7
**date** 9:18 11:11 26:4 28:13,14,22 29:4,5,24 31:10 35:9,10 47:1 48:20,21 52:12 57:25
**dated** 13:5 22:16 23:23 29:15 31:4 39:3 56:5
**dates** 31:13 63:1
**day** 24:17 46:15 65:9 66:7,19
**days** 24:18
**dcard@consumerlaworg.com** 2:6
**debt** 19:14 20:4 21:10 24:22,23,24 37:17,18,20 39:7,8,9,15,19,24 40:1,2,12,19,20,21,24 47:16 49:10,20,22 54:1,7,11,20,21,23 56:20
**decide** 24:16
**decided** 8:13
**decision** 29:19 30:6 41:14
**default** 12:18 43:9 44:23
**Defendant** 1:9 2:7
**defenses** 17:6,10,14
**demanded** 27:2 33:6,20
**Dennis** 2:3 5:17
**deny** 40:19
**department** 26:19 29:21 30:16 44:12 46:1 56:12 57:10
**departments** 56:25
**depends** 40:5
**depo** 16:2
**deposition** 1:15 5:14,22 7:22 10:15 11:10,13,16 12:4,25 13:4,10,14,18 14:6 16:4,21 18:25 20:11,17,21 21:1 28:25 29:11 31:16,18,21 49:16 51:17 64:22 65:5
**depositions** 12:20
**designated** 12:24 16:9 29:11
**details** 11:20
**determine** 43:14
**differences** 61:17
**different** 50:24 53:11,21 54:17,18 55:14 56:24 62:22 63:25
**Direct** 3:2 5:3
**directly** 66:16
**disagree** 27:20
**discovered** 31:20
**discovery** 17:18 18:11,19 30:23,24 31:4,7 40:18

56:21 60:19
**discuss** 55:2,7
**DISCUSSION** 7:13 28:17
**disfavored** 8:24
**dispute** 50:12
**district** 1:1 8:21,23
**document** 29:8 36:13 38:11,12,14 39:2 47:4 48:4,8 51:24 56:5,8 58:2
**documentation** 30:15
**documents** 17:17,21 20:17,19 21:3,7 29:13 30:17 32:1
**dollars** 26:1 50:6,7,10
**done** 5:23 8:13 15:21,22 19:4,6 32:24 33:4,6,17 38:16 43:11 52:10
**door** 28:16
**drafting** 46:5
**drives** 61:3
**drove** 61:7 62:25
**due** 55:21 56:2 57:21
**duly** 5:2 66:8
**dunning** 37:15 39:17 42:5 55:19,20
**Durham** 1:17
**during** 31:20 48:21
**duty** 61:23

E

**earlier** 38:4,10,18 45:3
**earn** 32:24 33:18
**either** 66:16
**electronically** 46:9,12
**eliminating** 48:25
**else** 64:21
**embarrass** 10:23 12:5 14:5 15:19
**employed** 62:13
**employees** 53:13
**employment** 66:13
**engaged** 41:22
**enter** 44:4
**entered** 36:8 44:6
**entirety** 65:6
**entry** 51:25 56:15 57:5,7,11
**errata** 65:7
**essentially** 61:14
**estimate** 19:7 33:5
**estimated** 23:11 26:1,7,8,11,17 34:6,14,25 41:5 42:9 43:8,15 44:25 47:6,14,15,17,21, 23 48:1,10,12,19 49:3,5 63:21 64:8
**estimation** 56:1
**et** 14:13
**Everyone** 54:17
**everything** 17:13 27:10
**exact** 23:15 61:15
**exactly** 58:11 61:19
**examination** 3:1,2 5:3 66:12
**examined** 66:11
**example** 24:14,16
**except** 8:1
**excuse** 7:23 14:3 34:11
**exhibit** 13:6,7 16:5 17:11 18:7,10 22:14,16 23:24 25:10,14 28:20 56:7,9
**exhibits** 16:7,20,25
**exist** 30:25 48:5,8
**existence** 31:10
**exists** 35:21 37:7,9 64:8
**expired** 45:19
**expires** 65:11
**expressly** 49:21
**extraordinary** 9:1

F

**fact** 41:19,20
**fair** 19:14 20:4 22:3 27:22 32:3 49:10 53:7
**faith** 11:25 12:4 14:7 15:8
**Fallon** 2:8 7:11,23 8:2,5,8,18 9:7,9,14,19,22 10:3,5,12,14,18,20,22 11:5,15,18 13:19,22 14:11,15,20,23 15:22,25 19:24 22:9 28:15 31:3,20 33:8,11,22 34:16 36:1,4,12,18 37:23 38:1,8 40:14,25 41:6,11,25 42:15,22 43:1,3 45:1,9 46:17 49:23 54:12 56:22 62:9,20 63:7,22 64:10,18
**familiar** 53:22
**familiarized** 51:19
**Fannie** 59:2,5,8,12
**FCCPA** 19:20
**FDCPA** 19:20
**Feb** 57:16
**Federal** 22:2 59:4,6
**fee** 26:7,8,11 32:25 35:5 43:23 48:15 50:17,18 51:2,3,5 64:2
**feel** 11:8
**fees** 23:11 26:2,5,19 32:13 33:5,13 34:7,15,25 41:5 42:9 43:8,16,19 44:25 47:6,14,18,20,21, 23 48:2,10,12 49:3,5 50:12,13,24 51:1,8,10,18,19 52:2 60:3 63:21 64:1,9
**field** 60:25 61:3
**figure** 32:10,13,22 43:18 48:13,16,17,20,25 50:2,15 51:20 52:13,18
**file** 11:22 20:11 31:8 35:13 36:5,22,25 40:23 45:15,20 47:4 51:7
**filed** 5:19 15:24,25

16:16 17:6 28:12,14 30:4,8 60:2
**filing** 28:7,10 51:8,10 55:22
**final** 32:13
**finally** 27:23
**financed** 58:12
**finances** 53:5,8
**financing** 58:8
**finish** 58:9
**firm** 36:15 44:13 46:5 59:25
**first** 6:1 11:10 47:12
**five** 19:9,11,12 63:6
**flat** 43:23
**Florida** 1:1 2:5,9 8:21 19:15 20:7 50:19,25 51:4,6 58:19
**FNMA** 22:4 23:8 59:1,2
**force-place** 60:11
**force-placed** 60:7,14
**foreclose** 45:19
**foreclosed** 34:7
**foreclosure** 26:9,13,14 32:11 33:1,12,14 36:15 43:25 44:1,14 45:18,22,25 46:7 51:2,9 52:3 56:6,11
**foreclosure-related** 19:18 32:17
**foregoing** 65:5
**forgot** 58:25
**form** 19:24 20:12 22:9 24:8 27:25 33:8,22 34:16 40:14,25 41:6,11,25 46:17 49:23 54:12 56:22 62:9 63:20,22 64:10,18
**forms** 58:12
**Fort** 2:9
**forward** 31:11
**free** 11:22
**Freemant** 53:17
**F-r-e-e-m-a-n-t** 53:16
**frequently** 20:4
**front** 29:14
**froze** 55:1
**full** 5:5 35:1 36:4 50:1 65:6
**fully** 34:3 35:2 44:8 47:16
**fund** 27:16,21
**funds** 60:14
**future** 43:20,21 48:20,21

G

**gather** 60:22
**general** 13:25 15:1,5 45:2 46:7 50:25
**generated** 24:17
**Gentlemen** 14:17
**Georgia** 50:24
**getting** 61:25
**giving** 6:2 63:16
**grass** 61:18,19,22,23,25
62:1,2
**greatly** 6:10 8:24
**ground** 5:24
**group** 60:23
**guess** 53:16

H

**hand** 66:18
**handle** 35:19 53:5
**handled** 8:22
**handles** 53:7
**handling** 15:3 35:13
**happen** 24:11 43:21 48:21
**happened** 34:1,9 52:14
**happy** 31:22
**harass** 10:24 12:5 14:5 15:19
**hardship** 55:5
**having** 5:2 9:8 49:6
**head** 6:9 59:15
**heart** 49:13
**hello** 54:24
**hereby** 65:5 66:6
**hereinbefore** 66:8
**hereto** 66:18
**he's** 56:2 57:13
**hire** 62:12
**history** 20:25
**Hold** 22:15 28:15
**Hollywood** 2:4,5
**home** 21:13,20 58:16
**Hong** 57:16,19
**H-o-n-g** 57:16
**human** 61:7
**hyphen** 7:5

I

**I'd** 11:24 51:12
**identification** 18:13
**igloo** 7:6
**I'll** 11:6 16:11 45:9
**illegal** 41:10,13,23
**I'm** 5:17 6:20 9:10 10:22 12:1 13:5,20,22 14:10,17 15:9,22 16:8 17:9 18:3,16 19:7,12 21:18 22:14,15 23:17,22 26:18 27:21 28:12,18 30:5 31:24 34:21 37:12,14,21 38:10,23 39:1,5 41:8,13 42:20 43:3 47:9,17 48:25 53:15,19 55:1 57:10,14
**immediately** 43:8 52:3
**improperly** 9:3
**Inc** 1:8 5:10,12 29:4
**include** 38:21 43:21 60:7
**included** 26:1
**includes** 36:6
**including** 18:15 35:3
**incorrect** 38:9
**increased** 50:14
**incur** 26:5 33:13
**incurred** 47:20

59:24 60:4
**independent** 62:8,12
**INDEX** 3:1 4:1
**indicate** 55:4
**indicated** 18:25
**indicating** 30:15
**indirectly** 66:16
**individual** 26:18 53:18 61:2 62:25
**individually** 53:18
**individuals** 54:9 57:8,10 58:3
**influence** 6:14,15
**information** 14:11,12 21:4 24:2,24 36:10 39:9 46:11,16
**initiate** 45:17 51:9
**initiated** 46:7
**ink-signed** 46:4
**inquire** 38:10
**insofar** 38:15
**inspect** 60:25
**inspection** 60:23,24 61:12 62:16
**inspections** 60:20 61:8 62:5,23
**inspects** 61:4
**instance** 40:22 46:14
**instruct** 32:11
**instructing** 8:23 14:25 15:10,11
**instructs** 9:3
**insurance** 24:17 60:8,11,15
**intend** 12:3
**intended** 14:4 15:19
**intent** 10:23 45:18
**intention** 12:5
**interested** 66:16
**interpreting** 42:18
**interrogatory** 18:17
**interrupt** 8:4
**invoice** 35:18,20 38:21
**invoiced** 47:3
**invoices** 35:15 36:15 38:6
**invoicing** 29:20
**involve** 15:13
**involved** 29:18 46:1
**involvement** 14:1
**involves** 12:21
**involving** 9:1 14:3
**irrelevant** 8:9 14:2
**issue** 8:15 30:2,6 48:14 58:16
**issued** 29:6
**issues** 11:21 15:7,15,18
**items** 13:17
**it's** 5:7 6:2 8:9 10:3 11:3,12,25 13:4 20:9 22:16 29:3 36:16 38:13,19 39:3 41:14,23 43:13 45:3,21 46:25 47:9,10,22 61:6 62:3
**I've** 13:3 19:4 20:9,20 45:2,14

J

**James** 57:18
**Jay** 57:3
**Jenny** 5:7 7:6 65:5,8
**J-e-n-n-y** 5:8 7:6
**JENNY** 1:15 5:1
**job** 54:20
**jobs** 54:10
**Johnston** 65:3 66:3
**JP** 25:18
**Jr** 2:3
**judicial** 51:6
**July** 56:5
**jury** 12:20

K

**Kahane** 26:15,16,21 32:12,17 33:14 35:7,10,12,15,21 36:22 37:2 43:18,23 44:13,18 45:24 46:16,20,24 47:2,3 50:21,22 52:12,20,25 53:3 64:15
**Kevin** 1:5 5:18 58:5
**knocking** 28:15
**knowledge** 13:15,16 19:25 21:6,17 66:10
**knowledgeable** 19:23
**known** 57:6
**Kujawa** 1:24 66:5,23

L

**labeled** 18:14
**Landony** 57:12
**language** 39:11
**last** 5:8 33:17
**late** 42:6
**latest** 50:15
**Lauderdale** 2:9
**law** 2:4 6:3
**lawyer** 9:3,4
**layman's** 12:17
**led** 47:15
**Lee** 5:7,9 7:6,15 9:18 10:2 16:15 17:4,13 18:24 24:1 25:9 31:12,25 32:3 38:24 39:1 42:18 63:14 65:5,8
**L-e-e** 5:8 7:6
**LEE** 1:15 5:1
**legal** 5:5 8:1,3,6 10:19 12:13,16 23:11 26:1,5,11 30:15 32:24 33:4,5,17 34:6,15,25 38:8 41:4,5,7,10,12,23 42:9,12 43:4,8,15 44:25 47:6,14,18,19,21,23 48:1,10,12 49:3,5,24 50:8,17,18,24 51:1 59:23 60:3 63:21 64:9,16
**length** 62:2
**Leslie** 1:24 66:5,23
**less** 51:1
**let's** 10:11 48:25 51:23
**letter** 22:11 23:22

24:2,12,18,19,21 25:3 26:6 34:4,5,19 35:2,3 37:15 39:3,12,17 40:3,5,7,8,23 46:25 47:2 60:12,17
**letters** 42:5 55:19,20 56:2 57:10
**letting** 62:2
**limit** 11:1
**LINE** 4:2
**list** 13:3,18
**listed** 13:13 16:4 54:10 60:11,17
**listen** 39:6
**litigation** 14:1,12 15:12 30:3
**little** 22:8 27:21 55:1 63:24
**LLP** 2:8
**loan** 14:16 15:3,6 20:22,23,25 21:13,20,23 22:1 30:13 31:11 34:4,11,13,23 35:3 40:4,13 43:8 44:8,20,23 45:2,14,19 50:6,9,14 52:3 57:21 58:10 59:7,9,16 60:4,14
**loans** 12:18 21:16 31:4 60:22
**local** 8:22 31:19
**located** 55:11 58:16
**locations** 55:13
**locum** 9:11
**log** 30:15,21 31:9,10 36:5 52:6 53:12 56:15
**logs** 20:22 31:14
**long** 5:11 43:5
**long-term** 55:5
**loss** 54:19 57:6
**lot** 53:21

M

**ma'am** 5:5,15 7:10,20 9:5,25 10:8 12:9,14 13:3,10 18:8,21 24:20 28:22 29:2 30:6 32:23 36:21 40:9 43:7 45:7,13 53:13 54:25 55:12 56:8 57:4 58:5 60:19
**Madam** 13:7 16:3,23 17:9,24 18:5 23:21 25:13
**Mae** 59:2,5,8,12
**mail** 23:1 46:10,13
**maintain** 25:19
**malpractice** 11:12
**manner** 10:25 11:25 48:11
**marking** 18:6
**marriage** 66:15
**matter** 5:18 60:1
**matters** 66:10
**may** 9:5 19:17 24:11 33:11 37:23 40:15 41:1,7,10 48:21 49:25 51:1 54:17,18,19 55:5 58:2
**maybe** 24:18 37:13 42:4 57:23
**McGinnis** 2:8
**mean** 37:21 44:10 48:7 50:19 55:20 60:21
**means** 60:22
**measure** 61:21
**mediation** 12:13,14,16
**mediations** 12:19
**medication** 6:16
**memory** 29:16
**mentioned** 48:22
**Meridian** 1:16
**message** 52:5
**messing** 18:1
**mic** 18:1
**million** 50:5,7,10
**minutes** 63:6
**mislead** 6:21
**misunderstood** 42:4
**mitigation** 54:19 57:7
**model** 62:11
**modification** 54:3 55:4
**monetary** 9:6
**money** 23:19 25:11,22 26:24 27:18 29:23 32:5,9 53:3
**Morgan** 25:18
**mortgage** 20:23 21:11,20,24 22:1,2,4 46:3,5,13 47:9,11,13,22 58:25 59:13
**motion** 8:20 9:10,22 10:5,22,25 11:22 13:22 15:22,23,24 16:1 45:4
**move** 12:2
**moving** 14:24
**mowed** 61:25
**multiple** 57:21
**myself** 51:19

N

**N.A** 59:11
**narcotics** 6:15
**National** 22:2 59:4,6
**natural** 30:14
**nature** 15:4 36:13
**necessary** 11:9
**nobody** 44:18
**nodding** 6:9
**non-jury** 12:20
**nor** 66:13,15
**normal** 11:9 44:22
**North** 1:17,25 65:2 66:2,6
**notarial** 66:18
**notary** 1:25 65:11 66:5,23
**note** 20:23 46:4,12
**notes** 30:25 31:10
**nothing** 66:9
**notice** 13:13 16:4,7 29:11 32:4 45:18 46:6 61:18 62:15
**noticeable** 61:17
**noticed** 51:17
**notices** 40:6
**November** 28:5 29:5,16,17

O

**oath** 61:6 63:15 65:1,5 66:12

**Object** 19:24 20:12 22:9 24:8 27:25 33:8,22 34:16 40:14,25 41:6,11,25 46:17 49:23 54:12 56:22 62:9 63:22 64:10,18

**objected** 45:2

**objecting** 8:16 14:24 15:9

**objection** 8:1,6,8 9:16,22 10:5,19 13:21 36:12 42:25 43:3,4

**objections** 64:4

**obligation** 6:5

**obtained** 24:24 39:9

**obvious** 10:23

**occasion** 55:3

**Occasionally** 20:6

**occasions** 19:3

**occurred** 48:22

**October** 31:5 66:19

**office** 8:10 11:19 31:8,15

**officer** 12:13,16 57:6,7

**official** 66:18

**Oh** 45:11

**okay** 5:17,21 6:8,11,12,20,23,24 7:2,3,4,9,15,20 8:19 9:13,16,24 10:7 12:7,12,16,24 13:3,12,16 16:3,13,19,23 17:1,9,17,24 18:4,9,20 19:6,19,22 20:7,10,16 21:2,19,23 22:6,20,22 23:6,10,14,18,21 24:5,20 25:5,8,13,25 26:4,8,11,14,16,20,23 27:1,6,12,17,22 28:4,7,13,24 29:2,9,18,23 30:2,11,17,22 31:2,17,24 32:16,20,23 33:3,16,20 34:21 35:4,6,12,15,20 36:7,19 37:15,20 38:23 39:22 40:1,4,11,18,22 41:17,22 42:14,24 43:4,14 44:1,6,9,18,22 45:11,16,23 46:9,14 47:19,24 48:4,11 49:6,10,15,18 50:5,11,21 51:10,13,16,21,23 52:15,23 53:15,21 54:5,9 55:6,11,14,19 56:4,11 57:2,17 58:5,11,15,20,24 59:5,7,10,16,19,22 60:2,6,18 61:2,6,11,17 62:4,7,15,19,25 63:5,19 64:6,15,21

**ones** 51:22

**operating** 53:4

**opinions** 38:17

**opportunity** 16:15,19 17:4

**oppress** 10:24 12:6 14:5 15:19

**order** 9:11,23 10:6 13:23 14:25 15:9 35:2 36:8 45:4,5 60:21 61:24

**ordered** 43:17 44:11

**ordering** 46:4

**orders** 60:25

**Organization** 2:4

**original** 46:12

**origination** 47:11 59:14

**originator** 59:9

**outdated** 24:19

**outside** 42:17

**outstanding** 32:13

**overgrown** 61:23 62:1

**owes** 21:11

**owned** 58:25

**owner** 59:12

**ownership** 59:20

**owns** 22:1

P

**PA** 2:4

**Page** 3:1 4:2

**paid** 23:15 33:6 34:24 46:19 47:2 48:13,15 52:12,20,25 64:2

**paper** 16:1

**paragraph** 27:3 47:9

**paragraphs** 47:10

**Park** 56:18

**Parks** 56:18

**Parkway** 1:16

**particular** 17:7 26:18 35:13,17 36:8 40:3,4,22,23 41:18 46:23 51:11 52:7,11 54:5

**parties** 66:14,15

**party** 40:13

**past** 55:21,22 56:2 57:21

**past-due** 23:4,7,11 40:12 54:1,7,23 55:2,7,8

**pay** 22:18 23:18 24:16 32:16 33:21 34:1,6,14 35:1,6 46:23 47:18,19,20 48:1,10,12 49:2,5 50:7 51:8,10 62:4 63:21 64:8

**paying** 48:16,25 58:9

**payment** 25:8 49:7 55:8

**Pembroke** 58:18

**people** 53:22 54:17,22 58:1

**per** 29:24 43:25

**perfectly** 11:24

**performed** 64:16

**permanently** 62:13

**permissible** 15:5,15

**permit** 45:9

**person** 12:19,23 56:18 66:8

**personal** 21:11
**personally** 35:19 37:1 53:19 56:19,21 57:9
**perspective** 63:24
**phone** 12:19 53:20
**phonetic** 57:12
**photos** 62:16,17
**pictures** 63:1
**Pines** 58:18
**placed** 32:4 52:2,3
**Plaintiff** 1:6 2:2 21:8 22:23 23:1,14 25:17 27:2 29:6 30:4,8,19 33:6,21 37:16 39:4 49:20 55:21 61:9 63:20 64:17
**Plaintiff's** 17:11,18 18:10 20:10 23:23 25:10,14 27:13,18,24 28:20 29:19,23 32:4,21 56:9
**please** 5:5 6:22 10:16 39:6
**point** 12:22 24:4,5,10 27:17 42:23 44:11 48:19
**policy** 21:2 43:7
**posed** 15:8
**position** 8:15 11:23 12:12 36:16 57:13,15
**positions** 57:14
**positive** 60:10
**possession** 62:17
**possible** 5:24
**practice** 8:24 44:22
**practices** 8:22 13:25 15:2 19:15,16 20:5,8 49:11
**preceding** 33:2
**pre-foreclosure** 56:12
**premium** 24:17
**preparation** 20:11,17,20 21:1 31:6,21
**prepared** 13:12,17
**Prescott** 1:5 5:18 16:16 21:11,17 22:7,18 23:23 28:19 39:18 40:2 41:5 43:12,15,17 44:2,3 46:6 47:5,13 48:1,9 49:2 50:11 54:23 55:15 58:6 64:8
**Prescotts** 15:14
**Prescott's** 14:16 15:14 21:24 45:2,14
**prescription** 6:15
**present** 31:11
**presume** 7:1
**previously** 27:6,9 48:22
**prior** 14:1,12 15:12 16:21 28:25 31:18 33:1 49:15 50:14 59:8 60:2
**privacy** 8:14,17 9:12,15
**privilege** 9:2 36:1,3 38:15
**privileged** 36:10
**problem** 6:17
**procedure** 63:3
**proceed** 44:14
**proceedings** 45:25
**process** 45:23
**produce** 36:14,17 38:3,5
**produced** 17:18,22 18:12 31:15,18 35:23 37:4,5,10 38:13 51:24 62:19
**producing** 18:16
**production** 31:22 37:11 38:20
**productions** 37:6
**professional** 11:6
**pronounce** 53:17
**property** 58:7,8,12,21 59:16 60:19,24 61:1,4,7,8,12 62:5,10,15,22
**prospective** 36:13
**protective** 9:11,23 10:6 13:23 14:24 15:9 36:7 45:4
**provide** 7:18 10:4 14:11,12
**provided** 13:3 30:22 34:4 36:10 48:16,18
**providing** 21:3 58:21
**public** 1:25 65:11 66:5,23
**pulled** 31:6
**purchased** 58:6,9
**purpose** 24:25 39:10 53:25
**purposes** 18:13
**pursuant** 10:23

Q

**question** 6:21,22,23 7:21 9:20,24 10:7 13:24 20:13 22:10 24:9 28:1 33:23 34:17 37:12 38:24 40:15 41:1,12 42:1,16,18,22 45:10 46:18 47:24 49:24 54:13 55:10 56:23 64:6,7,11,19
**questions** 4:1 6:17,25 7:1 10:11,15 11:10 14:4,7 15:1,4,5,11,14,17 42:21 45:3
**quick** 63:5,19
**quickly** 5:23
**quote** 35:9 43:19 64:3
**quoted** 44:5

R

**range** 54:3
**reach** 57:22
**reading** 29:14 52:5
**realize** 51:16
**reask** 47:24
**reason** 31:17 37:5
**reasons** 8:14 54:4
**recall** 19:17 31:25 35:8 38:24 49:17 50:13 52:5 60:16
**recalls** 29:16
**receive** 35:15
**received** 25:22

26:23 32:5,10
**RECESS** 63:10
**recognize** 38:19 56:24 57:2,3,9,11 58:1,4
**record** 5:6 6:10 7:12,13,16,17 8:13 14:18 28:17 59:15 63:9,12,14
**records** 30:20 31:23
**redact** 38:14
**redacted** 36:9
**reduced** 66:12
**refer** 29:14 45:20 57:5
**referenced** 20:20
**referral** 46:2
**referring** 22:11,14,16 31:12,14 44:16
**reflects** 38:15
**refund** 29:21 30:2,7,14,16 32:15
**refunded** 30:18
**refuse** 10:10 45:8
**refused** 27:13,15
**refusing** 7:17 10:14
**regarding** 15:12 52:1
**regards** 42:17
**rein** 34:11
**reinstate** 35:2 50:6
**reinstated** 34:3,14,24 44:8,20 45:19
**reinstatement** 22:11 26:6 32:10,22 34:5,19 35:2,9 40:8 43:17,19 46:25 47:2 48:13,15 50:2,15 51:20 52:13,17 60:12,17 64:3
**related** 15:6 38:6 66:15
**relevant** 51:25
**relying** 49:8
**remember** 49:13 59:15
**rep** 53:20
**repeat** 6:23 30:5
**report** 61:24
**Reported** 1:24
**Reporter** 1:24 13:7 14:17,22 16:3,6,10,12,23 17:2,9,24,25 18:4,5,9,20,22 23:21 25:13 63:8,11
**reports** 61:12 62:16
**represent** 5:18
**representations** 24:2
**representative** 12:22,25
**representatives** 54:6
**representative's** 11:16
**representing** 59:25 60:1
**request** 18:18 30:23,25 31:7 36:14,17 38:2,3,5
**requested** 23:15 30:16 36:17 43:18
**requesting** 8:11 22:8,17
**requests** 17:19
**reserve** 31:24 38:23
**residential** 58:6,12
**respect** 11:6 19:23 60:19
**respond** 31:7
**responded** 27:7
**response** 17:18 27:10 35:1 37:6,11
**responses** 18:11,17,19 40:18
**responsible** 47:14 51:4
**result** 30:3,7
**results** 66:17
**retained** 26:24
**return** 27:2,13,16,18,20 29:19 32:8
**returned** 27:23
**review** 12:18 13:9 16:16,19 17:5 25:10 28:23 29:20 30:9,11,17 36:6 44:13 49:14,15 56:17 60:16
**reviewed** 17:17 20:10,16,20,22 22:20 28:24 30:13,20 38:2 45:14 61:11
**risk** 9:4
**rule** 8:22 9:9,10 11:2 31:19
**rules** 5:25 11:3
**runs** 9:4

S

**Safe** 57:5
**Safecare** 62:8
**Safeguard** 60:23 61:24 62:10,11
**sanctions** 8:20 9:6
**scope** 11:21 15:7,18
**seal** 66:19
**search** 51:8 57:23
**searches** 57:18,20
**searching** 57:18
**second** 22:15 25:9 56:7,14,17 59:11
**securitized** 59:17
**security** 7:9,16 8:11 11:11
**seek** 42:11
**seeking** 41:23
**seen** 42:9
**send** 21:3 29:21 45:23 55:21 60:23
**sending** 42:5
**sent** 21:7 22:7,12,22,25 28:19 37:16 39:18 40:6 46:2,3
**sentence** 39:20
**separate** 32:20
**Sept** 23:20 57:7
**September** 1:18 13:5 22:7,17 23:23 25:23 26:23 29:24 32:5 33:7 39:3 42:6 50:16 52:16 60:7 65:9 66:7
**Seric** 2:8

**serious** 9:4
**service** 54:19
**serviced** 31:12
**servicing** 21:21 22:4 58:21 60:4,13
**Seterus** 1:8 5:10,11,19 12:12,17 13:1,25 15:1,13 16:17 17:6,15 18:12 20:11 21:2,7,11,21,23 22:7,22,25 23:3,19,22 25:11 26:5,20 27:6,12,15,23 28:19 29:4 32:3,18 33:7 37:1,16,17,18 39:4,19 40:11,19,20,24 42:5 43:7 49:1 50:22 53:13 55:8,21 58:21 59:24 60:3,13,14
**settlement** 12:21
**several** 19:4 57:14
**sfallon@mwbllp.com** 2:10
**sheet** 65:7
**She's** 8:13
**sic** 47:1
**sign** 48:9
**Signature** 65:6
**signed** 47:11 49:4 64:1
**simple** 59:19
**simply** 33:5
**single** 11:14 39:17
**sir** 7:24 10:13 11:9 17:2 52:19
**sitting** 51:13
**situation** 9:1
**six** 32:8
**skimming** 58:2
**skip** 57:18,20,23
**social** 7:9,16 8:11 11:11
**sold** 59:17
**solely** 43:11
**soliloquy** 43:5
**Somebody's** 28:15
**somewhere** 35:20 36:21,25
**sorry** 18:3 19:12 30:5 47:17 55:1
**sought** 39:4
**Southern** 1:1 8:21
**Southwest** 58:18
**speak** 45:15 55:3
**speaking** 14:19 43:2
**specific** 13:24 14:8 20:18 26:4 39:11 58:21
**specifically** 12:17 24:21 26:16 27:3 29:10 37:16 39:14,18,23 45:24 47:8,13 48:1 49:2,11 53:15 54:23 56:9,13 58:16
**speech** 15:21,24
**spell** 53:16 57:4
**SS** 56:18
**stage** 44:1
**stages** 43:25
**stamped** 51:24
**start** 10:11 11:5 18:1,2 44:3 45:21,25 46:3
**starts** 39:6 46:5
**state** 1:25 5:5 50:17,18,19 51:1,3,4,6,7 65:2,5 66:2,6
**stated** 26:6 64:3
**statement** 25:6 38:5,9,19 50:25 52:8
**states** 1:1 24:22 37:17 39:18
**statutes** 19:23
**step** 44:4,7,10,12,15
**steps** 36:5
**stipulated** 18:13
**stop** 6:22 10:16
**stopped** 33:1,12
**straight** 59:19
**strike** 13:6
**subject** 9:6 45:3 58:7 65:6
**submitted** 46:9,10,11 60:20
**subscribed** 65:9
**substantial** 9:6
**substantive** 36:6 38:16
**Suite** 2:4,9
**supplement** 31:22
**supplementing** 38:20
**supply** 16:11
**sure** 26:18 28:12 37:14 38:12 41:8,13 57:14,24
**surprised** 8:21
**sworn** 5:2 6:2 63:16 65:9 66:8
**system** 30:20 56:3 57:25

T

**taking** 7:21 13:13 16:4
**talk** 54:2
**talked** 59:23
**talking** 25:8 34:21
**tall** 61:19
**telephone** 53:25 54:6
**telephonically** 12:19
**tenens** 9:11
**terminate** 11:1,7 12:2
**terms** 12:17 15:3
**testified** 5:2 18:25
**testify** 13:12,17 31:25 66:9
**testifying** 10:17
**testimony** 6:2 29:25 61:6 63:16 65:6
**Thank** 14:22 18:21 41:4
**that's** 5:18 7:5 8:14 9:5,14 18:4,19 25:2 43:22 44:4,15 46:7 50:2 52:10,13 54:20 55:10 59:25 63:3 64:6
**there's** 9:15 32:24 35:20 36:13,22 46:7 53:11,21

57:10 61:2 62:7

**thereupon** 66:11

**they're** 15:17 18:14 19:17 62:2,12

**title** 44:11,12,14 51:8 54:18,20

**today** 6:2 59:25

**today's** 12:25 13:4 16:21 20:11,17,21 28:25 31:18,21 49:15 51:17

**top** 29:4 59:15

**topic** 13:18 29:11

**topics** 13:4,10,13,23

**total** 32:16

**totaling** 34:18

**trained** 46:2

**transcript** 65:6

**transcripts** 11:13

**transfer** 59:20

**transferred** 26:21 31:8

**transmit** 45:24 46:15

**treating** 11:5

**trial** 12:20

**trials** 12:20

**trick** 6:20

**triggered** 56:3

**true** 65:6

**trust** 53:4

**truth** 6:6 66:9

**truthful** 17:22 21:4,8 24:3,6 25:6

**truthfully** 6:18

**try** 57:22

**trying** 42:8 51:2

**Tuesday** 1:18

**type** 40:5

**typewriting** 66:12

**typically** 48:14

U

**Uh-huh** 18:22

**understand** 5:19 6:1,5,17,22,23 9:9,10 11:2,3 16:8 17:25 19:19 24:15 29:13 39:22 48:23 63:16

**understood** 7:1 24:20

**underwriter** 57:6

**UNITED** 1:1

**unless** 34:14,24 50:7

**unquestionably** 11:20 15:6,17,18

**updated** 43:19

**upon** 8:24 16:1

**USC** 49:12,19

**user** 53:12

**usually** 9:1 29:13 41:15

V

**vendor** 62:10

**verbal** 49:7

**verbally** 63:25

**verbatim** 39:5

**versus** 50:25

**via** 2:2 11:19 23:1 60:20

**Videoconferenced** 1:15

**videoconferencing** 2:2

**violation** 49:19

**violations** 62:1

**voiced** 52:1

**voluntarily** 8:12

**vouchered** 29:21 35:10 47:3

**VS** 1:7

W

**Wan** 7:5

**W-a-n** 5:7 7:5

**Wan-I** 1:15 5:1,7 65:5,8

**wasn't** 15:23

**weeks** 32:8

**we'll** 7:21 9:25 10:8 27:22 63:6

**we're** 7:11 21:20 31:21 33:3 37:21 50:6 51:2,13 58:15,20 63:5,14

**wet** 46:4

**we've** 13:19 64:15

**whatever** 11:8,9

**whatsoever** 21:16 49:1

**whereabouts** 38:11

**whereof** 66:17

**whereupon** 25:11

**whether** 41:23

**whoever** 56:14

**willing** 8:12

**wire** 23:20 25:17

**wired** 25:11,18

**witness** 8:23 9:3,21 10:24 11:18 12:6 14:5 15:10,11,20 52:19 66:11,17

**work** 5:9 20:4,9 32:17,24 33:2,4,17 38:16 44:19 45:21 46:8 60:24,25 64:16

**worked** 5:11 57:9

**works** 63:3

**writing** 47:5

**written** 18:17,18 28:22

**wrote** 37:1

**Wutscher** 2:8

Y

**yet** 31:14 33:20

**yours** 63:25

**yourself** 19:22

**you've** 5:22 12:24 18:24,25 20:20