**UNITED STATES DISTRICT COURT IN AND FOR**
**THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

KEVIN PRESCOTT,

Plaintiff, Case No.: 13-62338-CIV-BLOOM/VALLE

v.

SETERUS, INC.,

Defendant.

______________________________

**PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

The Court should grant the Plaintiff Kevin Prescott's ("Prescott") Motion for Summary Judgment because the Eleventh Circuit Court of Appeals has already held in this case that "Seterus violated the FDCPA and FCCPA by charging Prescott estimated attorney's fees that he had not agreed to pay in the security instrument." *Prescott v. Seterus, Inc.*, 15-10038, 2015 WL 7769235, at *5 (11th Cir. 2015). Prescott's security instrument, the Mortgage loan and Note, was assigned to Fannie Mae and Seterus became the loan mortgage loan servicer. Accordingly, Seterus serviced Prescott's mortgage loan subject to the terms of the security instrument and Fannie Mae's written Servicing Guidelines.

Seterus knew that it charged Prescott estimated fees because it attempted to collect and *actually did collect* estimated fees from him. Undeniably, Seterus knew it was collecting estimated fees. Further, by its own admission, Seterus knew Prescott never agreed to pay "estimated legal fees" to reinstate his loan. The undisputed facts show that Seterus knowingly violated Florida law when it forced Prescott to pay –and collected- estimated fees or face the certainty of losing his home that he had resided in for more than 15 years.

**STATEMENT OF FACTS**

Prescott separately filed its S.D. Fla. Loc. R. 56.1(a) Statement of Material Facts in Support of its Motion for Summary Judgment and Incorporated Memorandum of Law, and incorporates it by reference as if fully set forth herein.

**BACKGROUND**

On October 3, 2013, Prescott filed his Complaint in the Circuit Court in and for Broward County, Florida, alleging Seterus violated the FDCPA and FCCPA by charging for "estimated legal fees" not incurred and not agreed to by Prescott. (Stmt. of Fact, Exhibit G). In his Complaint, Prescott specifically alleged that Seterus violated 15 USC § 1692f(1); 1692e(2); and Fla. Stat. § 559.72(9) by forcing Prescott to pay $3,175.00 in "estimated legal fees" for fictitious legal work that was never performed (*Id.* ¶ 13). Prescott demanded attorney fees and costs under 15 USC 1692k(a)(3) and Fla. Stat. § 559.77(2) (*Id.* ¶¶ 18, 21).

After removal to this Court (Dkt. 1), on November 1, 2013, Seterus filed an answer denying all of the allegations contained in Prescott's Complaint (Dkt. 5). Finally, Seterus issued a refund to Prescott in the amount of $3,175.00 on November 14, 2013, but only after Prescott filed his Complaint and Seterus filed its Answer denying all relief (Stmt. of Fact, Ex. A, Wan Dep. 27:22-25; 28:1-9; 29:2-17).

On October 20, 2014, Prescott filed his Motion for Partial Summary Judgment (Dkt. 41). On November 7, 2014, Seterus filed its Motion for Summary Judgment (Dkt. 50). The Honorable Judge Beth Bloom issued the Court's Opinion on December 8, 2014, denying Prescott's Motion for Partial Summary Judgment and granting Seterus's Motion for Summary Judgment (Dkt. 85). In its Opinion, this Court specifically found that "[a]t oral

argument, the parties stipulated that Plaintiff is a consumer, the debt is personal in nature, and Defendant acquired the mortgage after it was in default." (Dkt. 85 pg. 5 ¶ 2).

On January 6, 2015, Prescott appealed this Court's judgment to the Eleventh Circuit Court of Appeals (Dkt. 86). After the parties briefed the issues, the Eleventh Circuit issued its Opinion reversing this Court's judgment under the FDCPA. The Eleventh Circuit found that Prescott defaulted on his mortgage on August 1, 2012, and Seterus became the servicer on October 1, 2012, while the mortgage loan was still in default. *See Prescott*, 15-10038, 2015 WL 7769235, at 3.

The Eleventh Circuit reversed this Court's judgment under the FDCPA and specifically ruled that Seterus violated §§ 1692e(2) and 1692f(1) of the FDCPA by charging Prescott for "estimated legal fees" because Seterus never incurred those fees and the security agreement did not allow Seterus to charge and collect those fees as a pre-condition of reinstating Prescott's mortgage loan. *Prescott*, 15-10038, 2015 WL 7769235, at 2. The Eleventh Circuit also reversed this Court's grant of summary judgment concerning Seterus's "bona fide error" defense.

> Seterus violated the FDCPA and FCCPA by charging Prescott estimated attorney's fees that he had not agreed to pay in the security agreement. That violation may have resulted from a "mistaken interpretation of the legal requirements of the FDCPA" or from a mistaken interpretation of the agreement itself. *See id*. at 576, 130 S. Ct. at 1608. Either way, the violation did not result from a factual or clerical error. Because under Jerman the bona fide error defense does not excuse Seterus' faulty legal reasoning, we cannot affirm the district court's grant of summary judgment to Seterus on that basis.

*Id* at 12.

As to the FCCPA, the Eleventh Circuit reversed this Court's judgment holding that "[t]he district court's summary judgment order stated that it "reached the same conclusion"

with respect to this claim as it did on Prescott's FDCPA claims. ***Because Seterus is not entitled to summary judgment on Prescott's FDCPA claims***, the summary judgment against him on his FCCPA claim cannot stand either, at least not on the grounds stated." (emphasis added); *Id* at 10. However, the Eleventh Circuit remanded this case with one specific issue, and only one issue, left for this Court to decide. That is; whether Seterus attempted to collect, and did collect, "estimated legal fees" from Prescott when it knew the fees were illegitimate. *Id* at 13.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(b) "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." In its Order dated April 7, 2016, this Court directed the parties to file supplemental briefs by April 28, 2016, on Seterus's liability under the FCCPA (Dkt. 115).

The Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. V. United States*, 516 F3D 1235, 1243 (11th Cir. 2008)

(quoting *Anderson*, 477 U.S. at 247-48). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

The Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F3D 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. AT 252.

The party moving for summary judgment bears the burden of showing there is no genuine issue of material fact. *Celotex Corp*., 477 U.S. at 323. Once the right to summary judgment is shown, the burden shifts to the non-moving party to set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 247-48. This requires the non-moving party to do more "than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Therefore, "a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fid. Bank*, 813 F.2d 610, 618 (3d Cir. 1987) (citing *Anderson, supra,* and *Celotex Corp.*, 477 U.S. at 317).

## MEMORANDUM OF LAW

### I. There is no material dispute of fact that Seterus violated the FCCPA and FDCPA because it charged and collected illegal "estimated legal fees" not incurred and not agreed to by Prescott.

There is no dispute that Seterus violated the FDCPA §§ 1692e(2) and 1692f(1) by charging and collecting "estimated" fees not incurred and not agreed to by Prescott for reinstatement of his mortgage. *Prescott*, 15-10038, 2015 WL 7769235, at *5. In the same vein, there is no dispute that Seterus violated the FCCPA by charging and collecting "estimated legal fees" it never incurred and that Prescott never agreed to pay for under the security instrument. Fla. Stat. § 559.72(9) ("In collecting consumer debts, no person shall: … Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist.")[1].

The FCCPA was enacted as "a laudable legislative attempt to curb what the Legislature evidently found to be a series of abuses in the area of debtor-creditor relations." *Harris v. Beneficial Fin. Co. of Jacksonville*, 338 So. 2d 196, 200-01 (Fla. 1976). The purpose of the FCCPA is to eradicate abusive collection practices and "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners,* 601 F.3d 1185, 1192 (11th Cir.2010); *In re Runyan*, 530 B.R. 801, 808 (Bankr. M.D. Fla. 2015).

The FCCPA is modeled after the FDCPA. *See* Fla. Stat. § 559.77(5)("In applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the Federal Courts relating to the

---

[1] In its Opinion, this Court specifically found that "[a]t oral argument, the parties stipulated that Plaintiff is a consumer, the debt is personal in nature, and Defendant acquired the mortgage after it was in default." (Dkt. 85 pg. 5 ¶ 2).

Federal Fair Debt Collection Practices Act."). However, the FCCPA's goal is to "provide the consumer with the most protection possible" because "in the event of any inconsistency between any provision of this part [FCCPA] and any provision of the Federal Act [FDCPA], the provision which is more protective of the consumer or debtor shall prevail." *LeBlanc,* 601 at 1192; Fla. Stat. § 559.552. This Court is required to give great weight and consideration to the opinion handed down from the Eleventh Circuit holding that "Seterus violated the FDCPA and FCCPA by charging Prescott estimated attorney's fees that he had not agreed to pay in the security instrument." *Prescott,* 2015 WL 7769235, at 5.

Prescott's Mortgage is the security instrument relied on by the Eleventh Circuit to reach its holding. The Mortgage permitted Seterus to "do and pay for whatever is reasonable or appropriate" to protect its interest in the Mortgage after Prescott's default. Under the Mortgage, "any amounts ***disbursed***" by Seterus would become additional debt owed by Prescott (emphasis added) (Prescott's Statement of Facts Exhibit A ¶ 9). To reinstate his loan, section 19 of the Mortgage required Prescott to pay Seterus for attorney's fees and other expenses ***incurred*** in enforcing its rights under the security instrument (emphasis added) (*Id* at ¶ 19). However, the Mortgage limited the fees that Seterus could legally charge and collect from Prescott to reinstate his loan. Section 14 provided that the "[l]ender may charge Borrower fees for services ***performed in connection with Borrower's default***, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument…" (*Id* at ¶ 14).

After Prescott defaulted on his mortgage loan, Seterus sent him a bill containing the total amount he was required to pay to reinstate his loan (Prescott's Statement of Facts Ex. F). The bill demanded payment of $15,569.64, which included $3,175.00 in "estimated legal

fees." It is undisputed that Kahane performed no legal work of any kind in connection with the $3,175.00 in "estimated legal fees:"

Q: Okay. And we've also agreed that Kahane and Associates performed absolutely no legal work for the $3,175 that Plaintiff was billed for; is that correct?

Mr. Fallon: Object to the form of the question.

A: Correct.

(Wan Dep. 64:15-20) and that Seterus did not pay and/or transfer to Kahane the $3,175.00 in "estimated legal fees" (Wan Dep. 32:23-25; 33:1-7; 64:15-20). There is also no dispute that if Prescott paid anything less than the $15,569.64, Seterus would have rejected the payment and foreclosed on Prescott's home

Q: ... Do you agree that his [Prescott] loan would not have been reinstated unless he paid you [Seterus] $3,175 in estimated legal fees.

A: My response is, he [Prescott] has to pay the full amount on the reinstatement letter in order to fully reinstate the loan, according to that letter, including –

Q: Okay.

A: -- the fee of $3,175 ["estimated legal fees"].

(Wan Dep. 34:23-25; 35:1-5).

Since Seterus did not ***actually incur*** the $3,175.00 in "estimated legal fees," those fees were not authorized under ¶ 9 of the Mortgage (allowing certain fees ***paid*** by the Lender to become additional debt of the Borrower if the fee amount was actually ***disbursed*** by the Lender) nor was Prescott required to pay the "estimated legal fees" under ¶ 19 of the Mortgage because Seterus never ***incurred*** the expense (requiring the Borrower to pay expenses ***incurred*** by the Lender to reinstate the loan). Neither was Seterus permitted to

charge Prescott the "estimated legal fees" under ¶ 14 of the Mortgage (Lender may charge Borrower fees for services ***performed*** in connection with default). Accordingly, Prescott's security instrument, which terms must be complied with, did not allow Seterus to charge for "estimated legal fees" not incurred and did not allow Seterus to collect "estimated legal fees" not agreed to by Prescott. Seterus freely admits this during the corporate representative deposition of Seterus.

> Q: Okay. Let me reask the question. Is there any contractual agreement that you're aware of that Mr. Prescott specifically agreed to pay for estimated legal fees?
>
> A: No.
>
> Q: Okay. So we agree that that document does not exist?
>
> A: No.
>
> Q: When you say no, you mean you're agreeing with me that that document does not exist?
>
> A: Mr. Prescott did not sign anything agreeing to pay estimated legal fees.
>
> …
>
> Q: … Is there any agreement whatsoever in between Seterus and Mr. Prescott where he specifically agrees to pay for estimated legal fees?
>
> A: No. There is not a signed agreement where he agreed to pay the estimated legal fees.

(Wan Dep. 47:24-25; 48:1-10, 23-25; 49:1-5).

The plain language of the Mortgage simply permitted Seterus to charge fees for services that were actually ***performed*** in connection with Prescott's default. Nevertheless,

Seterus demanded Prescott pay for "estimated legal fees" not incurred and not agreed to by Prescott in the security agreement. (Wan Dep. 34:13-25, 35:1-5).

The Eleventh Circuit came to the same conclusion and agreed in a unanimous opinion authored by Chief Justice Ed Carnes that "Seterus violated the FDCPA and FCCPA by charging Prescott estimated attorney's fees that he had not agreed to pay in the security agreement." *Prescott*, 15-10038, 2015 WL 7769235, at 13. The Court reasoned that the least-sophisticated consumer would not view the past-tense language in the Mortgage as encompassing "forward-looking estimated fees." *Id* at 7.

Specifically, the Court held that "Seterus violated [§§ 1692e(2)(B) and 1692f(1)] when it demanded that Prescott pay estimated attorney's fees before it would reinstate his loan, because Seterus could not "lawfully receive" those fees under the terms of the security agreement." *Prescott*, 15-10038, 2015 WL 7769235, at 9 (citing *Kaymark v. Bank of America* 783 F.3d 168, 175 (3d Cir. 2015) (finding that the "most natural reading" of similar language, when viewed "through the lens of the least-sophisticated consumer," was "that [the lender] was not authorized to collect fees for not-yet-performed legal services and expenses")); *see Bradley v. Franklin Collection Serv., Inc.,* 739 F.3d 606, 609–10 (11th Cir. 2014) (holding that a debt collector violated § 1692f by charging the debtor a 33-and-1/3% "collection fee" where the agreement at issue only demanded that he pay "all costs of collection"); *Law Offices of David J. Stern. P.A. v. Banner*, 50 So.3d 1221 (Fla. 4th DCA 2010) (holding that a demand for fees not "due and owing" in a mortgage reinstatement letter violated the FCCPA).

The Eleventh Circuit's holding alone is fatal to Seterus under the FCCPA. Fla. Stat. § 559.77(2)("In applying and construing this section, due consideration and great weight

shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act."). However, further support is found in the binding precedent of *Hewitt* and *Banner*, which are Westlaw reported decisions from a Florida Circuit Court that are directly on point and supports Prescott's argument.

*Hewitt* is a Florida case where a judge addressed the charge for foreclosure costs not yet incurred as of the date of the reinstatement letter. *Hewitt v. Law Offices of David J. Stern, P.A.*, 2012 WL 8018578 (Fla. 15th Cir. Ct. September 27, 2012). The defendant in *Hewitt* would include a $75.00 charge for a title update in the reinstatement letter. *Id.* The defendant would include the cost in the amount the plaintiff was required to pay for reinstatement, even if the title update had not yet been performed. *Id.* The Court found that the defendant violated the FCCPA § 559.72(9) by including the cost in the amount that borrowers were required to pay to reinstate their mortgages because the "Defendants are attempting to collect a debt that they knew was not legitimate" and was not currently "due and owing." *Id*. It specifically held that any charge not incurred for a service that was not yet performed at the time of the reinstatement letter violates the FCCPA § 559.72(9). *Id*.

Similarly, *Banner* addressed the charge of "attorneys fees for services not yet performed as of the date of the Reinstatement Letter." *Banner v. Wells Fargo*, 2011 WL 7446506 (Fla. 15th Cir. Ct. October 25, 2011). The Court in *Banner* also concluded that charges in the reinstatement letter for attorney services not yet performed violates the FCCPA § 559.72(9). *Id*.

This Court is bound under the *Erie* doctrine to apply the Courts' holdings in *Banner* and *Hewitt*. The Supreme Court in *Erie* recognized that "[e]xcept in matters governed by the

Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L.ED. 1188, 1194 (1938). As noted by the Eleventh Circuit, "the Erie Doctrine also applies to pendent state claims litigated in federal courts," and pursuant to the Erie doctrine, "substantive state law must be applied." *Lundgren v. McDanie*, 814 F.2d 600, 605 (11th Cir. 1987). Seterus cannot escape liability under the FCCPA for demanding "estimated legal fees" in the reinstatement letter for services that were not performed when the reinstatement letter was sent to Prescott.

Seterus could not "lawfully receive" the "estimated legal fees" because no agreement existed where Seterus could charge those the fees and Prescott would be required to pay them, yet Seterus demanded Prescott pay the "estimated legal fees" before it reinstated his loan. Simply stated, Seterus attempted to collect, and did collect, a debt that did not exist, and Prescott did not owe, which is a clear violation of the FCCPA § 559.72(9).

**II. There is no material dispute of fact that Seterus violated the FCCPA because it had "actual knowledge" that it attempted to collect, and did collect, illegal "estimated legal fees" that were not incurred or agreed to by Prescott.**

To prove a violation under the FCCPA § 559.72(9), Prescott only needs to prove Seterus possessed "actual knowledge" that it charged and collected a debt that did not exist; that is "estimated legal fees" that were not incurred and not agreed to by Prescott under the security agreement. *LeBlanc*, 601 F.3d at 1192 n.12. There is no clearer evidence of actual knowledge than Seterus's collection and receipt of the estimated fees charged.

Now, in the face of overwhelming evidence, and the Eleventh Circuit's specific ruling, the only position left for Seterus to take is that it did not know charging "estimated legal fees" for services that had not been performed was illegal. In other words, Seterus is

arguing that it knew all of the terms and conditions in Prescott's security agreement, but was mistaken on the law so it cannot be held liable under the FCCPA. The Eleventh Circuit and the Supreme Court of the United States have already rejected this argument. *Prescott,* 2015 WL 7769235, at 13 citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 581, 587, 130 S.Ct. 1605, 1611, 1615, 176 L.Ed.2d 519 (2010) ("The Supreme Court has held that the FDCPA's [and FCCPA's] bona fide error defense does not encompass "mistakes of law" or "misinterpretations of the requirements of the Act.") Seterus's same mistake of law argument was already rejected by the Eleventh Circuit and should be rejected again here.

Since Prescott filed this case, Seterus has vehemently argued that the Mortgage unequivocally permitted it to charge Prescott for "estimated legal fees" that it had not incurred.

> Q: In your file, do you have any document in which Mr. Prescott agreed in writing to be billed for estimated legal fees?
>
> A: Yes.
>
> Q: What – What specifically is it?
>
> A: It's the mortgage, paragraph – I'm going to say 7, 9, and 11, but it's a couple of the paragraphs in the mortgage itself that he signed at origination.
>
> (Wan Dep. 47:4-11).

However, when the undersigned questioned Ms. Lee further, she capitulated that Seterus actually knew the terms of the security agreement did not allow Seterus to charge "estimated legal fees" to Prescott for reinstatement of his mortgage loan.

Q: And, first of all, you're saying that in the mortgage that Mr. Prescott specifically agreed that he would be responsible for $3,175 in estimated legal fees?

A: Well, not estimated, but anything that led up to us needing to collect or fully accelerate the debt. There are estimated – or not estimated, I'm sorry, legal fees that he needs to – that he needs to pay.

Q: Okay. And did he agree to pay actual legal fees that had been incurred, or did he agree to pay estimated legal fees?

A: I believe the mortgage did not say if it's actual or estimated. It just says legal fees.

Q: Okay. Let me reask the question. Is there any contractual agreement that you're aware of that Mr. Prescott specifically agreed to pay for estimated legal fees?

A: No.

(Wan Dep. 47:12-25; 48:1-3).

In its Opinion, the Eleventh Circuit confirmed what Seterus already knew and specifically found that Seterus could not "lawfully receive" the "estimated attorney fees" under Prescott's security agreement for the simple reason that the plain language did not permit Seterus to charge and/or collect them. *Prescott*, 15-10038, 2015 WL 7769235, at 9. Seterus does not and cannot dispute it did not receive the estimated fees from Prescott.

What is even more troubling is that Seterus admitted during deposition that it never consulted with an attorney to verify if charging estimated attorney fees was permitted under Prescott's security agreement.

Q: ... Seterus is sending these dunning letters to my client as late as September 4, 2013; correct?

A: Correct.

Q: Did you seek advice of counsel to see if that was legal to do?

A: No.

Even Prescott knew the "estimated legal fees" were illegitimate because on September 5, 2013, Prescott contacted Seterus and disputed the amount of "estimated legal fees" he was being charged.

Q: What did you believe the term "estimated" to mean?

A: Exactly that, estimated.

Q: Okay. Define "estimated" for me.

A: That this is -- in this realm, that this is what we're gonna charge you and this is what you need to pay now, or else your loan's not gonna be reinstated. Why? Because I called Seterus and I said what are these for. And Seterus said -- the person on the end of the line said, sir, the end of that, at the bottom of that, that's what you need to pay, or else we're gonna proceed with foreclosure on your residence."

(Prescott Dep. 41:13-20; Prescott's Statement of Undisputed Facts G). Unfortunately, Prescott was left with "Hobson's choice"; pay the entire amount of $15,569,64, including the $3,175.00 in "estimated legal fees," or face the certain loss of his home that he has resided in for more than 15 years.

Notwithstanding all of the above, Seterus definitively knew that it could not charge fees for services that had not been performed and that it had not incurred. Fannie Mae

owns Prescott's Mortgage and Seterus is the mortgage servicer on behalf of Fannie Mae (Wan Dep. 22:1-5). As the servicer for Fannie Mae, Seterus is contractually obligated to comply with Fannie Mae's Servicing Guide, which requires Seterus to:

> [B]e aware of, and in full compliance with, all federal, state, and local laws (e.g., statutes, regulations, ordinances, administrative rules and orders that have the effect of law, and judicial rulings and opinions) [because] [a]s applicable law can change quickly, and sometimes without widespread notice, the seller/servicer must establish appropriate facilities for monitoring applicable legal developments and implementing appropriate measures to stay in compliance with applicable law. …

(emphasis added). *See* Fannie Mae Single Family Servicing Guide at A-2-1-08; https://www.fanniemae.com/content/guide/servicing/a2/1/08.html

The Servicing Guide also specifically delineates the type of fees and when Seterus is permitted to charge those fees to a homeowner in default. This includes, *inter alia*, "***all expenses, including attorney fees; that were actually incurred*** in connection with the foreclosure proceedings that are permitted under the terms of the note, security instrument, and applicable law" for reinstatement of the loan (emphasis added). *Id* at E-3.2-08; https://www.fanniemae.com/content/guide/servicing/e/3.2/08.html

Here, the Servicing Guide clearly placed Seterus on notice that it could not charge and not collect "estimated legal fees" for services that had not been performed; that Seterus had not incurred; and that Prescott had not agreed to pay for under his security agreement. Seterus also clearly failed to monitor specific judicial opinions that are directly on point to the issues in this case. *See Kaymark v. Bank of America* 783 F.3d 168, 175 (3d Cir. 2015) (finding that the "most natural reading" of similar language, when viewed "through the lens of the least-sophisticated consumer," was "that [the lender] was not authorized to collect fees for not-yet-performed legal services and expenses"); *see also Bradley v. Franklin*

*Collection Serv., Inc.,* 739 F.3d 606, 609–10 (11th Cir. 2014) (holding that a debt collector violated § 1692f by charging the debtor a 33-and-1/3% "collection fee" where the agreement at issue only demanded that he pay "all costs of collection")*; Veach v.* Sheeks, 316 F.3d 690 (7th Cir. 2003) (stating an amount of a debt in a debt collection letter as an estimate of future potential liability, rather than stating the current amount of the debt, violates the Federal Fair Debt Collection Practices Act (FDCPA)); *Law Offices of David J. Stem. P.A. v. Banner*, 50 So.3d 1221 (Fla. 4th DCA 2010) (holding that a demand for fees not "due and owing" in a mortgage reinstatement letter violated the FCCPA).

There is no dispute of material fact that Seterus possessed "actual knowledge that the threatened means of enforcing the debt was unavailable." *Thompson v. Mosby Legal Group, LLC*, Case No. 12-cv-692, 2013 U.S. Dist. LEXIS 183248, *8 (M.D. Fla. Oct. 28, 2013). Stated differently, a party is not liable under the FCCPA unless it "had actual knowledge that their claim of right to enforce the debt did not exist." *Id* at 8. Seterus admits that it knew Prescott's security agreement did not permit it to charge "estimated legal fees."

> Q: And, first of all, you're saying that in the mortgage that Mr. Prescott specifically agreed that he would be responsible for $3,175 in estimated legal fees?
>
> A: Well, not estimated, but anything that led up to us needing to collect or fully accelerate the debt. There are estimated – or not estimated, I'm sorry, legal fees that he needs to – that he needs to pay.
>
> Q: Okay. And did he agree to pay actual legal fees that had been incurred, or did he agree to pay estimated legal fees?

A: I believe the mortgage did not say if it's actual or estimated. It just says legal fees.

Q: Okay. Let me re-ask the question. Is there any contractual agreement that you're aware of that Mr. Prescott specifically agreed to pay for estimated legal fees?

A: No.

(Wan Dep. 47:12-25; 48:1-3).

As noted above, Seterus freely admits that it knowingly included "estimated legal fees" in the reinstatement letter and that it knew no legal services were performed in connection with the "estimated legal fees" when the reinstatement letter was sent. Seterus also admits that it definitely would not have reinstated Prescott's loan unless he paid the "estimated legal fees." There is no doubt that Seterus had actual knowledge of its FCCPA violation.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order that Seterus, Inc. violated the Florida Consumer Collection Practices Act as alleged in Plaintiff's Complaint, and award Plaintiff actual and statutory damages, attorney fees and costs, and any other relief this Court deems appropriate.

Dated: April 28, 2016

Respectfully submitted,

/s/ J. Dennis Card, Jr.

J. Dennis Card Jr., Esq
Florida Bar No.: 0487473
E-mail: DCard@Consumerlaworg.com
Darren R. Newhart, Esq.
Florida Bar No.: 0115546

E-mail: Dnewhart@consumerlaworg.com
Consumer Law Organization, P.A.
2501 Hollywood Boulevard, Suite 100
Hollywood, Florida 33020
Telephone: (954) 921-9994
Facsimile: (305) 574-0132

and

James L. Kauffman
Florida Bar No.: 012915
BAILEY & GLASSER LLP
1054 31st Street, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 342-2103
Email: jkauffman@baileyglasser.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 28, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

s/ J. Dennis Card, Jr.

**SERVICE LIST**

Christopher Hahn, Esq.
Florida Bar No.: 40979
E-mail: chahn@mwbllp.com
MCGINNIS WUTSCHER BEIRAMEE LLP
110 E. Broward Blvd., Suite 1700
Fort Lauderdale, FL 33301
Direct: (561) 807-6827
Fax: (866) 581-9302
Attorneys for Defendant
Service via CM/ECF