UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-cv-62338-BLOOM/Valle

KEVIN PRESCOTT,

    Plaintiff,
v.

SETERUS, INC.,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court upon Plaintiff Kevin Prescott's ("Prescott" or "Plaintiff") and Defendant Seterus, Inc.'s ("Seterus" or "Defendant") respective motions for summary judgment on remand. *See* ECF Nos. [108] (the Mandate of the United States Court of Appeals for the Eleventh Circuit, or the "Mandate"), [124] (the "Defendant's Motion"), [128] (the "Plaintiff's Motion"). The Court has carefully reviewed the Motions and the exhibits attached thereto, all supporting and opposing submissions, the Mandate, the record, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Defendant's Motion is granted, and the Plaintiff's Motion is denied.

**I. Background**

This controversy dates back to the spring of 2004, when Bank of America, N.A., extended a loan to Prescott. *See* ECF No. [123] (Seterus' Statement of Material Facts, or "DSOF") ¶ 1. In connection with this loan, Plaintiff signed a promissory note, which was secured by a mortgage to real property located in Pembroke Pines, Florida. *Id.* ¶ 2. Eight years later, in August of 2012, Plaintiff defaulted on the loan. This was only a few months before Bank of America, N.A. assigned the mortgage to Federal National Mortgage Association, and

Seterus began servicing the loan. *Id.* ¶ 3. Defendant also retained the services of a foreclosure law firm, Kahane and Associates, in order to initiate foreclosure proceedings against Prescott. *Id.* ¶ 5.

Prescott requested to reinstate his mortgage in August of 2013. On September 4, 2013, Defendant sent a dunning letter to Plaintiff stating that "the reinstatement amount if received between 9/4/2013 and 9/27/2013 is $15,569.64." ECF No. [123-1] at 34 ("Reinstatement Letter"); *see* ECF No. [127] (Plaintiff's Statement of Material Facts, or "PSOF") ¶ 8. Under the heading "Reinstatement Amount," Defendant provided Plaintiff with an itemized list of charges. These charges included $3,175 for "Estimated Legal/Attorney" under the heading "Estimated Charges Through 9/27/2013." Reinstatement Letter at 36-37; PSOF ¶ 9. Plaintiff paid the total balance of $15,569.64 – including the $3,175 for estimated legal fees, which had not yet been incurred – to Defendant on September 26, 2013.

Thereafter, on November 14, 2013, Seterus refunded Prescott the $3,175.00 in estimated legal fees. *See* DSOF ¶¶ 22-23. Seterus' legal mediation officer, Jenny Lee, testified to Seterus' "standard procedures" relevant to these facts, which involve charging consumers in the foreclosure process for "estimated legal fees" before legal services are rendered. PSOF ¶ 24. "Once the reinstatement figure is received" from the consumer, and "the final figure of outstanding fees" associated with the foreclosure is determined, Seterus refunds to the consumer the remaining amount, *i.e.*, the unspent amount. DSOF ¶ 23.

Before Prescott was refunded the estimated fees, he filed the instant action in the Seventeenth Judicial Circuit Court of Florida. The underlying complaint alleges that the inclusion of estimated attorney's fees in his restatement balance violated the Fair Debt Collection

Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA"). *See* ECF No. [1] (Complaint). Defendant filed a notice of removal with this Court on October 25, 2013, after which time the parties filed motions for summary judgment. On December 8, 2014, this Court granted summary judgment for Seterus on all of Prescott's claims. ECF No. [85]. Prescott then appealed. *See* ECF No. [86].

Ultimately, the Court of Appeals for the Eleventh Circuit reversed this Court's Order on Summary Judgment with respect to the FDCPA claim[1] and remanded the FCCPA claim for consideration in the first instance. *See generally* Mandate. Pursuant to the Mandate, the Court then entered summary judgment on the FDCPA claim in favor of Prescott. ECF No. [115]. Shortly thereafter, Seterus filed a Motion for Reconsideration, which was denied. *See* ECF Nos. [118], [133]. Accordingly, Seterus' liability under the FCCPA is the sole issue presented for adjudication.

**II. Legal Standard**

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir.

---

[1] "Because the least sophisticated consumer would not have understood that the security agreement 'expressly authorized' Seterus to charge estimated fees for legal services not yet rendered, we reverse the district court's grant of summary judgment on Prescott's § 1692f(1) claim. . . . Seterus violated [§ 1692e as well] when it demanded that Prescott pay estimated attorney's fees before it would reinstate his loan, because Seterus could not 'lawfully receive' those fees under the terms of the security agreement. That is true even if Seterus believed it was entitled to those fees. We therefore reverse the district court's grant of summary judgment to Seterus on Prescott's § 1692e(2)." Mandate at 9-12 (citations omitted).

2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But, even where an opposing party neglects to submit any alleged material facts in controversy, the court must still be satisfied that

4

all the evidence in the record supports the uncontroverted material facts that the movant has proposed before granting summary judgment. *See Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n. 6 (11th Cir. 2004). Through this lens, the Court addresses the instant Motions.

### III. Discussion

Although "Seterus violated the FDCPA and FCCPA by charging Prescott estimated attorney's fees that he had not agreed to pay in the security agreement," Mandate at 13, the FCCPA does not provide for relief from such a violation unless Seterus "possessed *actual knowledge* that the threatened means of enforcing the debt was unavailable," *id.* at 10 (quoting *LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185, 1192 n. 12 (11th Cir. 2010)) (emphasis in original). Specifically, the FCCPA provides: "In collecting consumer debts, no person shall: . . . (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence or some other legal right *when such person knows that the right does not exist*." Fla. Stat. § 559.72(9) (emphasis added). Put another way, "[t]o establish a violation under section 559.72(9) of the FCCPA, [as opposed to its federal counterpart,] it must be shown that a legal right that did not exist was asserted and that the person had *actual knowledge* that the right did not exist." *Bentley v. Bank of America, N. A.*, 773 F. Supp. 2d 1367, 1372-73 (S.D. Fla. 2011) (quoting *Pollock v. Bay Area Credit Service, LLC*, Case No. 08-61101-CIV, 2009 WL 2475167, at *9 (S.D. Fla. Aug. 13, 2009)) (emphasis added).

Prescott argues that the testimony of Ms. Lee amounts to evidence of an "admission" by Seterus that it had actual knowledge. Prescott's Motion at 1, 13-15, 17. Ms. Lee testified as

follows:

> Q: In your file, do you have any document in which Mr. Prescott agreed in writing to be billed for estimated legal fees?
> A: Yes.
> Q: What – what specifically is it?
> A: It's the mortgage, paragraph – I'm going to say 7, 9 and 11, but it's a couple of the paragraphs in the mortgage itself that he signed at origination.
> Q: And, first of all, you're saying that in the mortgage that Mr. Prescott specifically agreed that he would be responsible for $3,175 in estimated legal fees?
> A: Well, not estimated, but anything that led up to us needing to collect or fully accelerate the debt. There are estimated – or not estimated, I'm sorry, legal fees that he needs to – that he needs to pay.
> Q: Okay. And did he agree to pay actual legal fees that had been incurred, or did he agree to pay estimated legal fees?
> A: I believe the mortgage did not say if it's actual or estimated. It just says legal fees.
> Q: Okay. Let me re-ask the question. Is there any contractual agreement that you're aware of that Mr. Prescott specifically agreed to pay for estimated legal fees?
> A: No.

*See* ECF No. [123-3] (Lee Deposition) at 47:4-48:3.

This testimony provides little in the way of evidence of actual knowledge. It demonstrates that Seterus now acknowledges that the subject mortgage did not expressly provide for payment of estimated legal fees in the case of default. However, drawing all reasonable inferences in favor of Prescott, this lack of clarity alone does not amount to affirmative evidence that Seterus *knew*, at the time of collection, that it could not demand estimated legal fees in connection with the default. In fact, it seems to suggest the opposite, namely, that Seterus' understanding of its legal right to collect these estimated fees was lacking. *See also* Mandate at 10. Ms. Lee, as a representative of Seterus, appears to believe that the language of the agreement "reach[ed] so broadly," as to encompass both actual and estimated fees. *Id.* at 7. Prescott even notes that Seterus has always maintained that "the mortgage unequivocally permitted it to charge

Prescott for 'estimated legal fees' that it had not incurred." Plaintiff's Motion at 13; *see* ECF No. [123-1] at 1 (loan agreement). Specifically, Seterus argues that it was authorized to charge these estimated fees pursuant to section 9 ("pay for whatever is reasonable and appropriate to protect [the] Lender's interest in the Property"), section 14 ("charge Borrower fees for services performed in connection with Borrower's default . . . including . . . attorney's fees"), and section 19 ("take[] such action as Lender may reasonably require to assure that Lender's interest in the Property . . . shall continue unchanged") of the loan agreement. ECF No. [137] (Defendant's Response) at 5-6; *see* DSOF ¶ 7.

The Eleventh Circuit, however, foreclosed this argument, reasoning that "[t]he least sophisticated consumer would not have understood the language of Section 19 of the agreement to reach so broadly [as to encompass estimated legal fees]. The remainder of the agreement obligated the borrower to pay only those fees 'incurred' or 'disbursed' by the lender for 'services performed in connection with [his] default.' That past-tense language does not encompass forward-looking estimated fees." Mandate at 7 (citation omitted). However, Seterus' argument as to sections 9, 14, and 19, despite being incorrect, establishes an arguable good faith basis for aserting that the mortgage authorized it to charge estimated legal fees. Indeed, the Eleventh Circuit noted that "[s]ome evidence in the record suggests that Seterus may not have known that it could not charge estimated fees under the security agreement." *Id.* at 10. Ultimately, the fact that Seterus violated the law is not the same as proof that Seterus knew that it violated the law. To rule otherwise would be to render the requisite "actual knowledge" element of the FCCPA superfluous. Absent evidence of actual knowledge, Seterus cannot be held liable under section 559.72(9). *See McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008)

7

(finding that "[d]efendants had a good faith basis [and] . . . did not have the requisite actual knowledge . . . to subject them to liability under Fla. Stat. § 559.72(9)").

Accordingly, Plaintiff's argument that Seterus' liability under the FCCPA should be consistent with its liability under the FDCPA does not comport with the relevant law. *See* Plaintiff's Motion at 7, 13. Indeed, the Florida legislature requires courts to give "due consideration and great weight . . . to the interpretations of the Federal Trade Commission and the Federal Courts relating to the [FDCPA]." Fla. Stat. § 559.77(5). Although the Florida law is modeled after its federal counterpart, "the two statutes are not identical." Mandate at 10; *see Beeders v. Gulf Coast Collection Bureau, Inc.*, -- F. Supp. 2d --, 2010 WL 2696404, at *6 (M.D. Fla. July 6, 2010) ("There are intentional differences between the FDCPA and FCCPA, and a violation of the federal statute does not automatically constitute a violation of the state statute in situations where the FCCPA is distinguishable."). Importantly, one difference between the two laws is the issue discussed herein, namely, that the FCCPA "requires a plaintiff to demonstrate that the debt collector defendant possessed *actual knowledge*." *LeBlanc v. Unifund CCR Partners*, 601 F. 3d 1185, 1192 n. 12 (11th Cir. 2010) (emphasis in original). Prescott essentially asks the Court to overwrite the statute's clear language in keeping with the purpose of the statute, to protect consumers. That it cannot and will not do. *See Read v. MFP, Inc.*, 85 So. 3d 1151, 1154-55 (Fla. 2d DCA 2012) ("[A] trial court may not ignore the FCCPA's plain language."); *see also Am. Home Assurance Co. v. Plaza Materials Corp.*, 908 So. 2d 360, 366 (Fla. 2005) ("[C]ourts should avoid readings that would render part of a statute meaningless.").

Prescott relies on two cases from the Fifteenth Judicial Circuit Court of Florida for the proposition that because Seterus violated the FDCPA, it also violated the FCCPA – essentially

amounting to an argument that Seterus had actual knowledge by virtue of its conduct alone. *See Hewitt v. Stern*, No. 50 2009 CA 036046 XXXXX MB AH, 2012 WL 8018578, at *1 (Fla. Cir. Ct. Sept. 27, 2012); *Banner v. Wells Fargo Bank, N.A.*, No. 502007CA000815XXXXMBAO, 2011 WL 7446506, at *1 (Fla. Cir. Ct. Nov. 4, 2011). *Banner*, 2011 WL 7446506, at *1, however, involves the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), rather than the FCCPA, and is thus inapposite. On the other hand, in *Hewitt*, the court did rule that the "standard practice" of the defendant debt collector/loan servicer of including a "cost that had not been incurred . . . in the amount that borrowers were required to pay to reinstate their mortgages" *ipso facto* amounted to "attempting to collect a debt that they knew was not legitimate" under section 559.72(9) of the FCCPA. 2011 WL 7446506, at *1. This Court, nonetheless, has trouble squaring *Hewitt* with the plain language of the FCCPA, which imposes the additional evidentiary bar to relief, proof of actual knowledge. *See also* Mandate at 10, 12 (explicitly and implicitly acknowledging this requirement, instructing that the FCCPA "requires a plaintiff to demonstrate that the debt collector defendant possessed *actual knowledge*," and noting that "[s]ome evidence in the record suggests that Seterus may not have known that it could not charge estimated fees under the security agreement"). In other words, Prescott does not prevail in this suit simply by virtue of Seterus' violative conduct. Instead, the FCCPA "requires a plaintiff to demonstrate that the debt collector defendant possessed actual knowledge" that the conduct was violative. *Id.* at 10 (citing *LeBlanc*, 601 F.3d at 1192 n. 12).

Prescott further contends that the Eleventh Circuit's rejection of Seterus' bona fide error defense bears on its liability under the FCCPA. Under the FDCPA, "the bona fide error defense protects against liability for 'errors like clerical or factual mistakes,'" as compared to "'mistakes

9

of law' or 'misinterpretations of the requirements of the [FDCPA].'" Mandate at 12 (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 581, 587 (2010)). The Eleventh Circuit, therefore, held that "under *Jerman* the bona fide error defense does not excuse Seterus' faulty legal reasoning." *Id.* at 13. However, it does not follow from the finding that Seterus is not entitled to the bona fide error defense under the FDCPA that Seterus' behavior violates the FCCPA, as the liability schemes are different. The bona fide error defense is a "narrow carve-out to the general rule of strict liability under the FDCPA." Mandate at 12 (quoting *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270-71 (11th Cir. 2011)). Because the FCCPA – as compared to the FDCPA – does not hold debt collectors strictly liable, the bona fide error defense is inapplicable here. Furthermore, even if the bona fide error defense somehow did apply here, the fact that Seterus employed faulty legal reasoning, and did not make a mere clerical mistake, clearly does not mean that it knew that its reasoning was faulty, as the FCCPA requires.

Likewise, and despite Prescott's protestations to the contrary, the FCCPA does not hold a debt collector liable for constructive knowledge, *i.e.*, that Seterus should have known that its conduct violated the statute. *See* Plaintiff's Motion at 16 (arguing that Seterus was contractually obligated to "be aware of, and in full compliance with, all federal, state, and local laws," and "failed to monitor specific judicial opinions that are directly on point to the issues in this case"). Because it is axiomatic that constructive knowledge is not actual knowledge, even assuming Plaintiff's argument is true, any such finding would be insufficient to impose liability under Florida law. *See McCorriston*, 536 F. Supp. 2d, 1279 ("Constructive knowledge is not sufficient."); *see also Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 6 (Fla. 4th DCA 2009)

("The statute does not provide for recovery if the creditor merely should have known the debt was not legitimate.").

It has been established that Seterus violated the FCCPA when it demanded that Prescott pay estimated legal fees. *See* Mandate at 13. However, Florida law does not provide relief for this violation alone; instead, as a prerequisite to relief, and as discussed herein, it was Prescott's burden to demonstrate that Seterus had actual knowledge that it could not charge these estimated fees. Prescott has simply failed to surmount this hurdle, which is dispositive under the facts presented. Seterus is not liable under the FCCPA as a matter of law. *See McCorriston*, 536 F. Supp. 2d at 1279 (granting summary judgment for defendant where plaintiff had not established actual knowledge); *Arianas v. LVNV Funding LLC.*, 132 F. Supp. 3d 1322, 1330 (M.D. Fla. 2015) (granting summary judgment for defendant where plaintiff was "unable to show that [defendant] had actual knowledge that the debts were illegitimate").

### IV. Conclusion

Florida statutory law precludes relief under these facts, where no actual knowledge of the Defendant's violative behavior has been demonstrated. Therefore, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment, **ECF No. [124]**, is **GRANTED**;
2. Plaintiff's Motion for Summary Judgment, **ECF Nos. [128]**, is **DENIED**; and
3. Defendant's Motion to Deem Statement of Material Facts in Support of its Motion for Summary Judgment Admitted and Grant its Renewed Motion for Summary Judgment by Default, **ECF No. [140]**, is **DENIED AS MOOT**.

Case No. 13-cv-62338-BLOOM/Valle

**DONE AND ORDERED** in Miami, Florida, this 7th day of July, 2016.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record