UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

KEVIN PRESCOTT,

           Plaintiff,

v.                                            Case No. 13-62338-CIV-BLOOM/Valle

SETERUS, INC.,

           Defendant.
_____/

### SETERUS'S NOTICE OF DEPOSITION FILING AND DESIGNATION

Defendant, Seterus, Inc. ("Seterus"), by its undersigned counsel and pursuant to this Court's Order Scheduling Trial and Order of Instructions Before Calendar Call [D.E. 156], hereby notices and designates the following deposition testimony for use at trial:

**I.    DEPOSITION OF PLAINTIFF, KEVIN PRESCOTT [EXHIBIT 1]**

| Page(s) and Line(s) | Testimony |
|---|---|
| 39:7-16 | 7 Q So you also received the September 4, 2013<br>8 reinstatement letter, correct?<br>9 A Yes.<br>10 MR. CARD: Objection. Relevance.<br>11 A Yes.<br>12 Q Okay. And the total reinstatement due at that<br>13 time is 15,614.64, correct?<br>14 A As stated on this letter, yes.<br>15 Q Okay. Did you make that payment?<br>16 A Yes. |
| 39:17-40:17 | 17 MR. FALLON: Okay. And just to quickly mark<br>18 this, let's mark a document with Tropical Financial<br>19 Credit Union, Bates by the plaintiff 000001, as<br>20 Exhibit 13.<br>21 (Defendant's Exhibit No. 13 was marked for<br>22 Identification.)<br>23 BY MR. FALLON:<br>24 Q Does this evidence the payment that you made?<br>25 A Yes. This is –<br>1 Q What is that document?<br>2 A It's a wire, electronic wire. |

|  | 3 Q To Seterus?<br>4 A To Seterus.<br>5 Q In what amount?<br>6 A It would have been for the entire amount<br>7 requested, 15,614.14.<br>8 Q Okay. That's what you believe you paid at that<br>9 time, correct?<br>10 A That's what I know I paid at that time.<br>11 Somewhere around that, yes.<br>12 Q Okay. It doesn't indicate that number on the<br>13 document, though, correct?<br>14 A Right. Oh, yes, it does. I'm sorry.<br>15 $15,569.64.<br>16 Q That's what you paid?<br>17 A That's what I paid. |
|---|---|
| 40:19-41:25 | 19 And in looking at the document marked as 12, and<br>20 actually it's page 4, the charge of $3,175 is titled<br>21 Estimated Charges Through 9/27/2013, correct?<br>22 A Correct.<br>23 Q Okay. When you received this letter, did you<br>24 read it?<br>25 MR. CARD: Objection. Relevance.<br>1 A Yes.<br>2 Q Did you read that particular line that said<br>3 Estimated Charges Through 9/27/2013?<br>4 A Yes.<br>5 Q Okay. What did you understand that to mean?<br>6 A That it says here attorney fees, property<br>7 inspections, and a summary of those charges, below that<br>8 line.<br>9 Q What did you believe the term "estimated" to<br>10 mean?<br>11 A Exactly that, estimated.<br>12 Q Okay. Define "estimated" for me.<br>13 A That this is -- in this realm, that this is what<br>14 we're gonna charge you and this is what you need to pay<br>15 now, or else your loan's not gonna be reinstated. Why?<br>16 Because I called Seterus and I said what are these for.<br>17 And Seterus said -- the person on the end of the line<br>18 said, sir, the end of that, at the bottom of that, that's<br>19 what you need to pay, or else we're gonna proceed with<br>20 foreclosure on your residence.<br>21 Q Okay. But in just basic English, what do you<br>22 believe the term "estimated" to mean?<br>23 MR. CARD: Objection. Answer the question. |

|  | 24 A Basic is estimate -- an estimated cost. An<br>25 estimated -- an approximation. |
|---|---|
| 42:1-6 | 1 Q Okay. And on September 26, 2013, is that the<br>2 date that's stated on Exhibit 13?<br>3 A Correct.<br>4 Q You made your payment to Seterus to satisfy the<br>5 amount indicated on Exhibit 12, correct?<br>6 A Correct. |
| 45:20-46:23 | 20 Q Understood. And following your payment of --<br>21 on September 26th, did you contact Seterus to request a<br>22 refund of the estimated charges indicated in the letter<br>23 marked as Exhibit 12?<br>24 MR. CARD: Objection. Relevance.<br>25 A I think -- I can't recall, but I know I had<br>46<br>1 called Seterus in regards to making sure my payments go<br>2 through. Which back to square one. And also -- square<br>3 one meaning it was very difficult to communicate with<br>4 them, even in absolutely perfect standing where I owed<br>5 absolutely nothing. Actually, I called -- they called me<br>6 and attempted to threaten me that they -- I was gonna go<br>7 in foreclosure because I owed $7. And I couldn't figure<br>8 out for the life of me what the $7 was, after I just paid<br>9 over $15,000. I think it was $7 or $9. But it was some<br>10 ridiculous amount.<br>11 Q Who did you speak to during that call?<br>12 A I'm not exactly sure. But that was very<br>13 frustrating. And at the end of it, the young -- it was a<br>14 young lady. She did apologize. I also -- I also did<br>15 ask -- I can't remember whether or not I asked before or<br>16 after about that. I can't recall. I know I did make<br>17 calls to Seterus.<br>18 Q So you can't recall whether or not you<br>19 requested a refund of the estimated charges listed in<br>20 Exhibit 12 that you paid on November 26, 2013?<br>21 A Not at that time. I can't recall.<br>22 Q But you did receive a refund, correct?<br>23 A Yes. |
| 47:3-6 | 3 Q Did you receive a refund of the 3,175 that you<br>4 paid, the estimated charges that you paid listed in<br>5 Exhibit 12?<br>6 A Yes, after I contacted my attorney. |
| 52:25-53:25 | 25 Q Were you surprised to receive this refund of<br>53<br>1 $3,175. |

3

|  | 2 A I don't know what I was. |
|---|---|
|  | 2 A I don't know what I was.<br>3 MR. CARD: Objection.<br>4 A To be honest with you, I don't know what I was.<br>5 I don't know how -- how I felt at the time. I'm still --<br>6 I don't know, damaged, hurt from all of this, dealing with<br>7 every single aspect of, you know, trying to live a normal<br>8 life and having to deal with individuals that constantly<br>9 used to call and harass you, send you documentation,<br>10 refuse your payment.<br>11 I think, and I'll put this on record, I've<br>12 spoken to two individuals when I have made -- out of all<br>13 the phone calls I've ever made to Seterus, two individuals<br>14 that appeared to be customer service, you know, were able<br>15 to help me, answer a question or say, hey, listen this is<br>16 what we need to do. And they stayed on the phone.<br>17 Everybody else, they were very aggressive. They didn't<br>18 want to take the payment. No, sir, we're not gonna accept<br>19 your payment. It's $5 too much or that's probably why we<br>20 sent it back or whatever the case may be.<br>21 Was I surprised? Nothing really surprises me.<br>22 That's just the way I am. You're asking me to compare<br>23 myself to a normal person or someone who, like myself. I<br>24 don't know what to tell you. I'll be honest with you. I<br>25 think -- go ahead. |
| 54:1-17 | 1 Q Okay. Did you request a refund of the $3,175<br>2 that was part of your payment of 15,000 and change?<br>3 A That was part of what we -- what was requested I<br>4 think via my attorney, yes.<br>5 Q So you believe your attorney requested the<br>6 refund?<br>7 A No, no, no. I pointed out that I believe that<br>8 all of these charges, plus other charges that I did not<br>9 even bring to my attorney, were unduly set upon me and my<br>10 family. And that's why I got an attorney.<br>11 Q All right.<br>12 A Because I did not get any responses before that<br>13 particular point.<br>14 Q Understood. But prior to filing suit, did you<br>15 ever request a refund from Seterus of the 3,175?<br>16 MR. CARD: Objection. Relevance.<br>17 A I can't -- I can't remember. |

## II. DEPOSITION OF SETERUS'S RULE 30(B)(6) CORPORATE REPRESENTATIVE, WAN-I JENNY LEE [EXHIBIT 2]

| Page(s) and Line(s) | Testimony |
|---|---|
| 12:12-23 | 12 Q. Okay. And what is your position with Seterus?<br>13 A. Legal mediation officer.<br>14 Q. Did you say mediation, ma'am?<br>15 A. Yes.<br>16 Q. Okay. Legal mediation officer. And in<br>17 layman's terms, what specifically do you do for Seterus?<br>18 A. I review loans that are in default. I attend<br>19 mediations telephonically, by phone, in person. We<br>20 attend jury trial, non-jury trials, depositions,<br>21 settlement conferences, anything that involves a<br>22 corporate representative to be the point of contact or<br>23 appear in person. |
| 17:13-16 | 13 Q. Ms. Lee, do you agree with everything that was<br>14 contained in the answer and the affirmative defenses<br>15 that were asserted on behalf of Seterus?<br>16 A. Yes. |
| 21:2-9 | 2 Q. Okay. Now, does Seterus have a policy when<br>3 they send documents to their customers of providing<br>4 truthful information to the customers?<br>5 A. Yes.<br>6 Q. And to the best of your knowledge, are all of<br>7 the documents that were sent from Seterus to the<br>8 Plaintiff truthful and accurate?<br>9 A. Yes. |
| 22:14-23:13 | 14 Q. I have -- Yes. I'm referring to Exhibit,, I<br>15 believe, C on the complaint. Hold on one second. I'm<br>16 referring to Exhibit B of the complaint, and it's dated<br>17 September 4th, 2013. And it is requesting that Mr.<br>18 Prescott pay $15,569.64.<br>19 A. Yes.<br>20 Q. Okay. And you reviewed that?<br>21 A. I have.<br>22 Q. Okay. And do you agree that Seterus sent that<br>23 to the Plaintiff?<br>24 A. Yes, I agree.<br>25 Q. And do you agree that Seterus sent that to the<br>1 Plaintiff via US mail?<br>2 A. Yes.<br>3 Q. And do you agree that Seterus was attempting<br>4 to collect a past-due balance?<br>5 A. Yes. |

|  | 6 Q. Okay. And do you agree that you are<br>7 collecting or attempting to collect that past-due<br>8 balance of behalf of FNMA?<br>9 A. Yes.<br>10 Q. Okay. And do you agree that part of that<br>11 past-due balance was for estimated legal fees in the<br>12 amount of $3,175?<br>13 A. Yes. |
|---|---|
| 23:14-20 | 14 Q. Okay. And do you agree that the Plaintiff<br>15 paid you the exact amount you requested, which is<br>16 $15,569.64?<br>17 A. Yes, I'm aware.<br>18 Q. Okay. And when did he pay that amount of<br>19 money to Seterus?<br>20 A. The wire came in Sept 26th, 2012. |
| 24:1-12 | 1 Q. Ms. Lee, do you believe that all of the<br>2 information and the representations in that letter were<br>3 accurate and truthful?<br>4 A. At that point in time, yes.<br>5 Q. Okay. Did there come a point in time when<br>6 they were not accurate and truthful?<br>7 A. Well, we cap --<br>8 MR. CHESHIRE: Object to the form of the<br>9 question.<br>10 A. We capture what is that point in time.<br>11 Something may happen afterwards that were not captured<br>12 on the letter. |
| 25:17-26:3 | 17 Q. And by wire, it appears that the Plaintiff<br>18 wired $15,569.64 to JP Morgan Chase Bank where you<br>19 maintain an account. Is that accurate? Do you agree<br>20 with that?<br>21 A. Yes.<br>22 Q. And do you agree that you received the money<br>23 on or about September 26th, 2014?<br>24 A. Yes.<br>25 Q. Okay. And do you agree that part of that<br>1 15,000-plus dollars included $3,175 in estimated legal<br>2 fees?<br>3 A. It did. |
| 26:4-22 | 4 Q. Okay. And when -- on what specific date did<br>5 Seterus incur $3,175 in legal fees?<br>6 A. As stated in the reinstatement letter, it was<br>7 an estimated fee.<br>8 Q. Okay. It was an estimated fee for<br>9 foreclosure? |

|  | |
|---|---|
|  | 10 A. Yes.<br>11 Q. Okay. And who estimated the legal fee to be<br>12 $3,175?<br>13 A. Our foreclosure attorney.<br>14 Q. Okay. And how is your foreclosure attorney?<br>15 A. Kahane and Associates.<br>16 Q. Okay. And who specifically at Kahane and<br>17 Associates estimated it at $3,175?<br>18 A. I'm not sure of the particular individual, but<br>19 it would come from their fees department.<br>20 Q. Okay. And did there come a time when Seterus<br>21 actually transferred $3,175 to Kahane and Associates?<br>22 A. No. |
| 27:12-21 | 12 Q. Okay. And would you agree that Seterus<br>13 refused to return Plaintiff's $3,175 in their answer to<br>14 his complaint?<br>15 A. No, I do not agree that Seterus refused to<br>16 return that fund.<br>17 Q. Okay. Can you point to me in -- Where did you<br>18 agree to return Plaintiff's money in your -- in the<br>19 answer to your complaint?<br>20 A. No, I said we did not disagree to not return<br>21 the fund. I'm a little confused. |
| 27:22-28:0 | 22 Q. Okay. Fair enough. We'll get back to it. Did<br>23 there come a time when Seterus finally returned<br>24 Plaintiff's $3,175?<br>25 MR. CHESHIRE: Object to the form of the<br>1 question.<br>2 A. Yes.<br>3 BY MR. CARD:<br>4 Q. Okay. And when was that?<br>5 A. It was in November, I believe the 7th or the<br>6 17th.<br>7 Q. Okay. And that was after the filing of the<br>8 complaint; correct?<br>9 A. Correct. |
| 29:18-30:21 | 18 Q. Okay. Okay. And who was involved in the<br>19 decision to return the Plaintiff's $3,175?<br>20 A. From my review, it was the invoicing<br>21 department. They vouchered the check to send the refund<br>22 back.<br>23 Q. Okay. And they had had the Plaintiff's money<br>24 by this date since September 26th, 2013, per your<br>25 testimony; is that correct?<br>1 A. Yes. |

|  | |
|---|---|
|  | 2 Q. Okay. And did they issue the refund as a<br>3 result of the litigation; in other words, that as of the<br>4 complaint that the Plaintiff filed?<br>5 A. I'm sorry, can you repeat that, again?<br>6 Q. Yes, ma'am. Was the decision to issue the<br>7 refund check as a result of the complaint that the<br>8 Plaintiff filed?<br>9 A. Based on my review, it does not appear to be<br>10 that way.<br>11 Q. Okay. Based on what -- in your review, what<br>12 does it appear to be?<br>13 A. I reviewed the loan, and it appears that the<br>14 refund took its natural course. I did not see any<br>15 documentation in the comment log indicating that legal<br>16 department requested this refund to the customer.<br>17 Q. Okay. What documents did you review that show<br>18 what -- how this check came to be refunded to the<br>19 Plaintiff?<br>20 A. I reviewed our system of records, which is the<br>21 comment log. |
| 32:3-15 | 3 Q. Ms. Lee, is it fair to say that Seterus was<br>4 placed on notice that they had $3,175 of Plaintiff's<br>5 money when they received his complaint in September of<br>6 2013?<br>7 A. Yes.<br>8 Q. And why would it take them six weeks to return<br>9 his money?<br>10 A. Once the reinstatement figure is received, we<br>11 instruct -- well, we close and billed the foreclosure<br>12 case with Kahane and Associates. After that, they need<br>13 to confirm of the final figure of outstanding fees. And<br>14 they -- once they confirm that and let us know that that<br>15 amount is not used, then we refund it to the customer. |
| 32:16-33:14 | 16 Q. Okay. And how much in total did you pay to<br>17 Kahane and Associates for any foreclosure-related work<br>18 they did on behalf of Seterus?<br>19 A. $1,125.<br>20 Q. Okay. That was the separate charge in the<br>21 Plaintiff's complaint; is that correct?<br>22 A. In the reinstatement figure, yes.<br>23 Q. Yes, ma'am. Okay. So the -- for the $3,175,<br>24 there's absolutely no legal work that was done to earn<br>25 that fee; is that correct?<br>1 A. Correct, because the foreclosure stopped prior<br>2 to any work preceding that. |

8

| | |
|---|---|
| | 3 Q. Okay. So there was -- So that we're clear,<br>4 you agree that there was no legal work done for this<br>5 $3,175, it was simply an estimate of legal fees to be<br>6 done, and it was demanded from the Plaintiff and paid to<br>7 Seterus on September 26th?<br>8 MR. FALLON: Object to the form.<br>9 BY MR. CARD:<br>10 Q. Is that accurate?<br>11 MR. FALLON: You may answer.<br>12 A. Yes, because the foreclosure was stopped in<br>13 time for any additional fees to incur with our attorney,<br>14 foreclosure attorney, Kahane and Associates. |
| 33:16-35:5 | 16 Q. Okay. Well, let me just break this down one<br>17 last time. For the $3,175, there was no legal work done<br>18 to earn that; correct?<br>19 A. Correct.<br>20 Q. Okay. And yet it was demanded from the<br>21 Plaintiff that he pay it; correct?<br>22 MR. FALLON: Object to the form of the<br>23 question.<br>24 A. Correct.<br>25 BY MR. CARD:<br>1 Q. And what would have happened if he did not pay<br>2 it?<br>3 A. Then he would not have fully reinstated the<br>4 loan, based on the letter that was provided, the<br>5 reinstatement letter.<br>6 Q. So if he did not pay these estimated legal<br>7 fees, he would have been foreclosed on?<br>8 A. No.<br>9 Q. What would have happened?<br>10 A. It would not have been --<br>11 Q. His loan would not have been rein -- excuse<br>12 me.<br>13 You said his loan would not have been<br>14 reinstated unless he agreed to pay $3,175 in estimated<br>15 legal fees?<br>16 MR. FALLON: Object to the form of the<br>17 question.<br>18 A. And other charges totaling the amount in the<br>19 reinstatement letter.<br>20 BY MR. CARD:<br>21 Q. Okay. I'm just talking about this $3,175.<br>22 A. He has --<br>23 Q. Is it -- Do you -- Do you agree that his loan |

| | |
|---|---|
| | 24 would not have been reinstated unless he paid you $3,175<br>25 in estimated legal fees?<br>1 A. My response is, he has to pay the full amount<br>2 on the reinstatement letter in order to fully reinstate<br>3 the loan, according to that letter, including --<br>4 Q. Okay.<br>5 A. -- the fee of $3,175. |
| 35:6-22 | 6 Q. Okay. Okay. When did you pay the $1,125 to<br>7 Kahane and Associates?<br>8 A. I do not recall that. But on the<br>9 reinstatement quote, the date that was on there is the<br>10 date that we vouchered the check to Kahane and<br>11 Associates.<br>12 Q. Okay. And what attorney at Kahane and<br>13 Associates was handling this particular file?<br>14 A. I do not know.<br>15 Q. Okay. Did you receive invoices from Kahane<br>16 and Associates, the corporation, or from one of the<br>17 attorneys in particular?<br>18 A. I did not see the invoice. I did not -- I did<br>19 not handle it personally.<br>20 Q. Okay. Somewhere there's an invoice that<br>21 exists from Kahane and Associates for $1,125?<br>22 A. Yes. |
| 41:4-42:2 | 4 Q. Thank you. Do you believe that it is legal to<br>5 bill Mr. Prescott $3,175 in estimated legal fees?<br>6 MR. FALLON: Object to the form. It calls for<br>7 a legal conclusion. You may answer.<br>8 A. I'm not sure.<br>9 BY MR. CARD:<br>10 Q. So it may be legal and it may be illegal?<br>11 MR. FALLON: Object to the form of the<br>12 question. It calls for a legal conclusion.<br>13 A. I wouldn't call it illegal, but I'm not sure.<br>14 I think it's the decision -- it's something that I<br>15 usually consult with an attorney for.<br>16 BY MR. CARD:<br>17 Q. Okay. And did you consult with an attorney<br>18 for this particular client?<br>19 A. After the fact.<br>20 Q. No, before the fact.<br>21 A. No.<br>22 Q. Okay. So you engaged in conduct that you<br>23 don't know whether it's legal or illegal without seeking<br>24 the advice of counsel; is that correct? |

| | |
|---|---|
| | 25 MR. FALLON: Object to the form of the<br>1 question.<br>2 A. No. |
| 44:7-22 | 7 Q. Ma'am, do you -- is it Seterus' policy to<br>8 immediately bill estimated legal fees once a loan goes<br>9 into default?<br>10 A. No.<br>11 Q. So this is something that was done solely to<br>12 Mr. Prescott?<br>13 A. No, it's not.<br>14 Q. Okay. So is -- how do you determine that you<br>15 are going to bill Mr. Prescott $3,175 in estimated legal<br>16 fees?<br>17 A. When Mr. Prescott ordered the reinstatement<br>18 figure, we went to Kahane and Associates and requested<br>19 updated fees and costs. Because the reinstatement quote<br>20 is good for an amount in the future, they have to<br>21 include a cost that is about to happen in the future, as<br>22 well. That's where the $3,175 came to. |
| 43:23-44:21 | 23 Q. Do you have a flat fee agreement with Kahane<br>24 and Associates?<br>25 A. Per stages of foreclosure.<br>1 Q. Okay. And what stage of foreclosure was Mr.<br>2 Prescott in?<br>3 A. To start off, it was the $1,125. Mr. Prescott<br>4 about to enter in the next step, and that's why the 300<br>5 -- $3,175 was quoted.<br>6 Q. Okay. And -- But he never entered into the<br>7 next step, as you call it, did he?<br>8 A. No, because he reinstated the loan fully.<br>9 Q. Okay. And so that I know, what -- when you<br>10 say the next step, what does that mean?<br>11 A. Well, up to the point, the title was ordered.<br>12 And the next step will be for their title department or<br>13 attorney at the firm, Kahane and Associates, to review<br>14 title clearing and proceed with the foreclosure.<br>15 Q. That's -- That's the next step that you're<br>16 referring to?<br>17 A. Correct.<br>18 Q. Okay. And -- And nobody at Kahane and<br>19 Associates ever did any of that work?<br>20 A. No, because the loan reinstated and we closed<br>21 and billed. |
| 44:22-45:22 | 22 Q. Okay. And is it -- is it your normal practice<br>23 that when a loan goes into default you automatically |

|  | 24 charge $1,125 and then you automatically charge $3,175 |
|---|---|
|  | 25 in estimated legal fees? |
|  | 1 MR. FALLON: Are you asking about Mr. |
|  | 2 Prescott's loan? I've objected to general |
|  | 3 questions, and it's subject to my earlier |
|  | 4 protective order -- or motion for a protective |
|  | 5 order, I should say. |
|  | 6 BY MR. CARD: |
|  | 7 Q. That would -- You can -- Ma'am, if you are |
|  | 8 going to refuse to answer, just let me know. |
|  | 9 MR. FALLON: I'll permit answer to the |
|  | 10 question. |
|  | 11 MR. CARD: Oh, okay. |
|  | 12 BY MR. CARD: |
|  | 13 Q. Then go ahead, ma'am. |
|  | 14 A. I've reviewed it based on Mr. Prescott's loan. |
|  | 15 I can't speak on another file. |
|  | 16 Q. Okay. |
|  | 17 A. But, yes, it is $1,125 to initiate the |
|  | 18 foreclosure after the notice of -- notice of intent to |
|  | 19 foreclose has expired and the loan was not reinstated at |
|  | 20 the time. The $1,125 is when we refer the file to the |
|  | 21 attorney, and it's their -- it's to start the work on |
|  | 22 the foreclosure. |
| 45:23-46:8 | 23 Q. Okay. So the process is, is you send -- what |
|  | 24 specifically do you transmit to Kahane and Associates |
|  | 25 for them to start the foreclosure proceedings? |
|  | 1 A. I am not involved in that department, but I |
|  | 2 was trained -- I trained with them. They sent a referral |
|  | 3 over. We sent a copy of the mortgage. We start |
|  | 4 ordering the actual note, the wet ink-signed note and |
|  | 5 mortgage to the firm. The firm starts drafting up a |
|  | 6 notice to Mr. Prescott to let him know that we have |
|  | 7 initiated foreclosure. That's in general. There's much |
|  | 8 more behind-the-scene work. |
| 46:23-47:3 | 23 Q. In this particular claim, when did you pay the |
|  | 24 1,125 to Kahane and Associates? |
|  | 25 A. It's on the reinstatement letter. I don't |
|  | 1 have it with you [sic]. But the date that was -- is on |
|  | 2 the reinstatement letter is when we paid it to Kahane -- |
|  | 3 we invoiced and vouchered to Kahane and Associates. |
| 47:4-23 | 4 Q. In your file, do you have any document in |
|  | 5 which Mr. Prescott agreed in writing to be billed for |
|  | 6 estimated legal fees? |

|  | 7 A. Yes.<br>8 Q. What -- What specifically is it?<br>9 A. It's the mortgage, paragraph -- I'm going to<br>10 say 7, 9, and 11, but it's a couple of the paragraphs in<br>11 the mortgage itself that he signed at origination.<br>12 Q. And, first of all, you're saying that in the<br>13 mortgage that Mr. Prescott specifically agreed that he<br>14 would be responsible for $3,175 in estimated legal fees?<br>15 A. Well, not estimated, but anything that led up<br>16 to us needing to collect or fully accelerate the debt.<br>17 There are estimated -- or not estimated, I'm sorry,<br>18 legal fees that he needs to -- that he needs to pay.<br>19 Q. Okay. And did he agree to pay actual legal<br>20 fees that had been incurred, or did he agree to pay<br>21 estimated legal fees?<br>22 A. I believe the mortgage did not say if it's<br>23 actual or estimated. It just says legal fees. |
|---|---|
| 48:11-22 | 11 Q. Okay. Did he give his consent in any manner<br>12 to pay for estimated legal fees?<br>13 A. If he paid the reinstatement figure --<br>14 typically a customer will call in if they have an issue<br>15 with the fee on the reinstatement. But he paid it. So<br>16 paying it is agreeing with the figure that we provided.<br>17 Q. So you believe that the figure that you<br>18 provided was correct?<br>19 A. At that point in time when we estimated that<br>20 figure. That figure is good through a future date, and<br>21 during that future date, things may happen, like I<br>22 mentioned previously, that have not occurred. |
| 50:11-51:9 | 11 Q. Okay. And did -- at any time did Mr. Prescott<br>12 call in to dispute the attorney's fees?<br>13 A. I recall him calling in to ask about the fees<br>14 on the loan because it increased from the prior<br>15 reinstatement figure to the latest reinstatement figure<br>16 in September 4th, and we advised him that it is the<br>17 legal fee charged for that state.<br>18 Q. The legal fee charged for the state, and do<br>19 you mean the State of Florida?<br>20 A. Correct.<br>21 Q. Okay. So -- So Kahane and Associates -- Is<br>22 that just with Seterus, or is that Kahane and<br>23 Associates?<br>24 A. Well, legal fees could be different in Georgia<br>25 versus Florida. I think it was a general statement<br>1 because legal fees for another state may be less and |

| | |
|---|---|
| | 2 foreclosure -- we're trying to tell him the fee that we<br>3 charged him is the fee according to that state.<br>4 Q. So the State of Florida is responsible for<br>5 this fee, is what you're saying?<br>6 A. No. The State of Florida is -- is a judicial<br>7 state, so we have to file it with the court, we have to<br>8 pay filing fees, and we have to pay title search fees to<br>9 initiate the foreclosure. |
| 63:19-64:4 | 19 Q. Okay. I just want to cover two quick things.<br>20 We agree that the Plaintiff has never agreed in any form<br>21 to pay for estimated legal fees; correct?<br>22 MR. FALLON: Object to the form. Asked and<br>23 answered. You can answer.<br>24 A. Well, I -- my perspective is a little bit<br>25 different than yours, but he did not verbally or --<br>Lee, Wan-I Jenny 09-23-2014 Page 64 of 66<br>1 signed anything that says he agreed to the fees, but me,<br>2 the way I see it is that if he paid the -- the fee that<br>3 was stated in the reinstatement quote, then he had no<br>4 objections to it. |

**III.   DEPOSITION OF SANDY TEIXEIRA, KAHANE & ASSOCIATES, P.A. [EXHIBIT 3]**

| | |
|---|---|
| 9:19-10:6 | 19 Q (By Mr. Card) First of all, does Kahane and<br>20 Associates, P.A. have a file open for Kevin Prescott?<br>21 A At the matter, it's not opened at this time.<br>22 Q At one point in time, did Kahane and<br>23 Associates, P.A. have a file open for Kevin Prescott?<br>24 A Yes, we did.<br>25 Q And did you provide Seterus, Inc. with an<br>1 estimate of legal fees for $3,175?<br>2 And by you, I don't mean you personally.<br>3 I mean Kahane and Associates, P.A.<br>4 A We did provide estimated fees and costs, not<br>5 100 percent confident if that is the total amount that<br>6 we did quote. |
| 10:7-20 | 7 Q Can you look at Page Number 4 of the document<br>8 that I just handed to you and look at the section<br>9 entitled Estimated Legal Fees, please?<br>10 MS. CARBO: Exhibit 2 you're referring to?<br>11 MR. CARD: Yes, ma'am.<br>12 A I'm looking at Page 4.<br>13 Q (By Mr. Card) And you would agree that there<br>14 is an estimate of legal fees in the amount of $3,175 |

14

| | |
|---|---|
| | 15 there?<br>16 A That's correct.<br>17 Q And was that provided by Kahane and<br>18 Associates, P.A. to Seterus, Inc.?<br>19 A That typically is provided by Kahane and<br>20 Associates, P.A. to Seterus, Inc. |
| 11:2-15 | 2 Q Is it your policy to allow Seterus, Inc. to<br>3 bill their consumers for estimated legal fees?<br>4 A Can you repeat the question?<br>5 Q Is it your policy to allow Seterus, Inc. to<br>6 bill their consumers for estimated legal fees?<br>7 A We really don't have a policy as far as what<br>8 our client bills the borrower.<br>9 Q Okay. Does it -- do you believe that it's<br>10 appropriate to bill a consumer for estimated legal fees?<br>11 MS. CARBO: Objection to the question, but you<br>12 can answer.<br>13 A I think it's appropriate to advise the<br>14 borrower what the estimated legal fees and costs are<br>15 depending on the good through date. |
| 11:25-12:24 | 25 Q Did your firm provide any legal services for<br>1 that $3,175?<br>2 A We did.<br>3 Q What exactly did you do?<br>4 A We actually billed our clients $1,125 for<br>5 attorney fees.<br>6 Q Okay.<br>7 A We also billed our client $200 for the title<br>8 report.<br>9 Q Okay, but my question references specifically<br>10 that $3,175.<br>11 A I believe the, let me take a look at the<br>12 incurred.<br>13 Q Yes, ma'am.<br>14 A Because I believe those fees, oh, actually<br>15 that's above it.<br>16 I would need a breakdown of what the estimated<br>17 legal fees are here because I do see 1,125, which was<br>18 incurred.<br>19 Q Yes. I'm focusing strictly on the $3,175.<br>20 A The only thing that I am seeing here that is<br>21 not on the incurred that was incurred would be the $200<br>22 title fee.<br>23 So that was likely included in the $3,175<br>24 estimated legal fees. |

| | |
|---|---|
| 12:25-13:9 | 25 Q So can you tell me specifically what legal<br>1 work was done to justify the $3,175 in legal fees?<br>2 A Well, I can tell you the fee that was incurred<br>3 was the $1,125, specifically on attorney fees.<br>4 Q And we stipulate to that and we're not even<br>5 talking about that.<br>6 A Okay.<br>7 Q I'm talking strictly about the $3,175.<br>8 A If it's under estimated, we did not bill that<br>9 and that's not work that was incurred. |
| 13:14-14:13 | 14 Q Do you have any -- is it your position that<br>15 legal work was done for the $3,175 or not?<br>16 A I do believe that $200 of that $3,175 was<br>17 done.<br>18 Q Okay. What about the balance of it?<br>19 A The balance was not incurred.<br>20 Q And by not incurred, you mean there was no<br>21 legal work done?<br>22 A That's correct.<br>23 Q Okay. What was the $200 for?<br>24 A The $200 is for the title report.<br>25 Q And is that the actual cost of the title<br>1 report?<br>2 A It is.<br>3 Q And who was that ordered from?<br>4 A We get it from Fidelity.<br>5 Q And what was the $1,125 separate fee?<br>6 A Attorney fee.<br>7 Q And how many hours were done to substantiate<br>8 the $1,125?<br>9 A We actual don't do it by total hours. It's<br>10 work that's performed, so within that $1,125 what we do<br>11 is we review the title report. We run a SCRA, which is<br>12 a military search. We run a PACER, which is a<br>13 bankruptcy search. |
| 20:8-25 | 8 Q (By Mr. Card) Is it fair to say that anything<br>9 that's labeled as estimated refers to legal work that<br>10 has not been performed and anything that's labeled as<br>11 incurred refers to work that has been performed?<br>12 A The incurred is definitely work that has been<br>13 performed. The estimated is work that could be<br>14 performed and likely may be performed between now and<br>15 the good through date. |
| 20:16-25 | 16 Q Does your firm comply with the FDCPA and the<br>17 FCCPA when they're engaging in their foreclosure |

|  | |
|---|---|
|  | 18 activities?<br>19 A We do.<br>20 Q And do you expect your -- I don't know how you<br>21 characterize the relationship; mortgage servicers such<br>22 as Seterus, Inc. to comply with the FDCPA and the FCCPA<br>23 when they're using your documents such as estimated<br>24 legal fees?<br>25 A We do. |
| 22:7-23:2 | 15 Q And is it a standardized charge, the $1,125?<br>16 A That is the fee that we do charge on that<br>17 stage along with the other work that we do in that first<br>18 initial stage when the file is referred to us.<br>19 Q And that's to all consumers across the board?<br>20 A It's what we charged Seterus, Inc.<br>21 Q I'll isolate it to Seterus, Inc.<br>22 Is that the amount that's charged to all<br>23 consumers via Seterus, Inc.?<br>24 A Yes.<br>25 Q And the $3,175, is that the amount that's<br>1 charged to all consumers through Seterus, Inc.?<br>2 A With the conclusion of the foreclosure |
| 23:3-24:17 | 3 Q Okay. And when you send an estimate of legal<br>4 fees, is it the exact same amount for each of those<br>5 stages?<br>6 A It is.<br>7 Q So the first legal stage is $1,125?<br>8 A That's correct.<br>9 Q And the second legal stage is $3,175?<br>10 A That wouldn't be the next stage, but there is<br>11 -- it's different tiers.<br>12 Q Can you take me through the standardized<br>13 tiers?<br>14 A Sure. It would be $1,125, which is the first<br>15 initial one.<br>16 And then $450 which is the next tier, which is<br>17 the filing of the complaint.<br>18 Q Okay. And $450 is the charge to draft and<br>19 file the complaint; is that correct?<br>20 A That's correct.<br>21 Q And that's a standardized charge?<br>22 A Yes. That is what we charge.<br>23 Q Okay.<br>24 A And the next one is $450, I believe, for<br>25 judgment being entered.<br>1 Q And again, that's a standardized charge |

|         | 2 through Seterus, Inc.? |
|---------|---------------------------|
|         | 3 A Yes. |
|         | 4 Q What's the next one, ma'am? |
|         | 5 A The last stage would be the foreclosure sale, |
|         | 6 and I don't recall if it's $450 or what the next stage |
|         | 7 is, but it's, I don't believe it's larger than that. |
|         | 8 Q And again, the $450 is a standardized charge |
|         | 9 for all foreclosure sales through Seterus, Inc.? |
|         | 10 A Yes. They'd be the same fee. |
|         | 11 Q And then before you had referenced an amount |
|         | 12 of $1,575. |
|         | 13 A $1,575. |
|         | 14 Q Yes, ma'am. What stage? What is that for? |
|         | 15 A No, that was totaling up. |
|         | 16 Q That's adding everything? |
|         | 17 A Yes, yes. |
| 25:3-8  | 3 Q And so these -- standard fees that you just |
|         | 4 referred to, this is strictly for non-litigated files? |
|         | 5 A That's correct. |
|         | 6 Q And Mr. Prescott's file was a non-litigated |
|         | 7 file with respect to the $3,175; is that correct? |
|         | 8 A That's correct. |

Dated:  August 1, 2017                         Respectfully submitted,

                                               **SETERUS, INC.,**

                                    By:    /s/ Christopher P. Hahn
                                           Christopher P. Hahn, Esq.
                                           Florida Bar No. 87577
                                           Ernest P. Wagner, Esq.
                                           Florida Bar No. 89422
                                           MAURICE WUTSCHER LLP
                                           110 E. Broward Blvd., Suite 1700
                                           Direct:  (772) 237-3410
                                           Fax:  (866) 581-9302
                                           litigation@MauriceWutscher.com
                                           ewagner@MauriceWutscher.com
                                           chahn@MauriceWutscher.com

**Certificate of Service**

    I hereby certify on **August 1, 2017,** a true and correct copy of the foregoing was served via CM/ECF on all parties who are Filing Users.

                                         /s/ Christopher P. Hahn